### D. F. JOHNSON *v.* JOHN B. WELD.

Plaintiff claims from defendant a slave, through his wife, sole heir of *Frederic Christian.* Defendant sets up title through *his* wife, neice of *Christian*—to whom, he alleges, *Christian* donated the slave —and he pleads *res judicata.* In Tennessee one *Wheaton* had the slave in possession, and *Weld* the present defendant, brought an action of *replevin* for the slave. *Wheaton* had hired the slave from *Christian's* executor. *Weld* bonded the slave, and took him into possession. The executor of *Christian* then brought an action of *replevin* against *Weld,* and by legal process obtained possession of the slave, and returned him to the possession of *Wheaton.** The matter at issue between the parties was, whether the slave had been given by *Christian,* during his life, to *Weld's* wife. *Held:* In Tennessee slaves are personal property, and can only be claimed from the executor. The proper party in interest in Tennessee was, substantially, the party litigant in relation to the title of the slave—and the plaintiff in this suit, acquiring title through him ( the executor), ought to be bound by a judgment rendered against the executor as owner. Throughout these proceedings in Tennessee, the executor was a privy to *Wheaton,* he being a mere baillee and nominal party. This privity in estate binds the party by the judgment as effectually as if he had been a technical party to the record.

The article 2265 of the Code, and others of the same section, must not be considered as a strict, arbitrary and technical enactment, but as one declaratory of the conditions of the *res judicata* as a principle of jurisprudence.

These conditions of the *res judicata,* established in order to ensure the ends of justice, have been received in the jurisprudence of the civil law in the light most favorable to attain them. The effect of the *res judicata* is, consequently, held to extend to the successors of the *ayans cause,* the assignees of the parties and to all those who claim through them.

APPEAL from the Second District Court of New Orleans, *Lea,* J. *Elmore & King,* for plaintiff, cited Code, 2265.

*Hamner,* for defendant—cited 3 A. 36 ; ibid, 172 ; 1 Starkie on Evidence, p. 208, 367 ; 1 Greenleaf, § 522-3, 532-3, 535-6, 189, 180 ; Bull, N. P, 232 ; 4 Dall. 120 ; 2 Doug. 517 ; 1 Doug. 56 ; 6 Rand. 865 ; Vermont, 317 ; 4 Rawle, 273 ; 1 How. Miss, 53.

EUSTIS, C. J. The plaintiff sues for the recovery of a slave named *John,* who, he alleges, belongs to him in right of his wife, by virtue of his marriage ; she being the sole heir of *Frederic Christian,* deceased, to whom the slave originally belonged. The place of residence and marriage of the parties was in the State of Tennessee.

The defendant claims the slave in the right of his wife, to whom, it is alleged, the slave was given by his master, *Frederic Christian,* in his life time—she having been his neice.

The Judge of the Second District of New Orleans, before whom the case was tried, gave judgment for the plaintiff, and the defendant has appealed.

There was a plea of *res judicata* filed by the defendant, which was over-ruled. The facts at issue had already been passed upon by a jury of the vicinage, in the State of Tennessee, who found in favor of the present defendant, and it was with evident hesitation that the learned Judge, on a review of the case, came to a different conclusion.

No question is raised as to the right of the plaintiff to maintain this action. The case has been argued on the right of property of the parties respectively, and on the force and effect of the judgment pleaded.

The suit in which the judgment was rendered, was instituted by the present defendant in the Criminal and Commercial Court of Memphis, in the State of

---

* This latter suit was never tried.

Tennessee, in May, 1847, against *Sterling M. Wheaton*, who had the slave in his possession. The suit was an action of *replevin*, having for its object the restitution of the slave to his proper owner. The jury found that the slave was the property of the plaintiff, and judgment was rendered accordingly for his recovery. After unsuccessful motions on behalf of the defendant, *Wheaton*, for a new trial and in arrest of judgment, an appeal was taken by him to the Supreme Court of Tennessee, which rendered judgment, affirming in all things that of the Court below.

The District Judge considered that the parties litigant were not strictly the same in both suits, and that the plea of *res judicata* was, therefore, not available to the defendant.

The testimony of the witnesses, whose testimony was taken under commissions, who were intimate with the brothers *Christian*, is, in some respects, singularly conflicting. From the respectability of the witnesses, we are induced to believe that the gift of this slave to the defendant's wife, when a child, notwithstanding what was said on the subject and the impressions created thereby, was not of that definite character which transferred the property in the slave. That such was the belief of her father, whose duty it was to protect the interest of his child, as well as to restore the slave if only confided to him by his brother, we think is shown by the fact of the slave having been placed by him on the inventory of his brother's estate. The whole possession, of which the defendant seeks to have the benefit, was in the father, who has, by this fact, recorded his conviction of its origin and character.

We are, therefore, under the necessity of examining the defence resting on the verdict and judgment, which the defendant has pleaded.

We assume the law of the State of Tennessee, on this subject, to be that a verdict and judgment on any matter distinctly put in issue before a Court of competent jurisdiction is conclusive thereof, between the parties and their privies.

The defendant was the plaintiff who recovered judgment, and *Sterling M. Wheaton* was the defendant. *Wheaton* was a nominal party to the record. He had hired the slave from *Matthews*, who was the executor of *Frederic Christian*. On the institution of the action of *replevin*, the slave was taken from the possession of *Wheaton* and delivered to the plaintiff, *Weld*, on his bond. This took place on the 3d May, 1847. Two days after, the executor of *Frederic Christian* instituted his action of *replevin* against *Weld*, and the slave was taken, by legal progress, from the possession of *Weld* and delivered to the executor, who returned him to the possession of *Wheaton.*

Slaves being personal property in Tennessee, it is plain that at this time the title of the slave was in the executor, who had the same property in the slave which the testator had. Accordingly we find the matter in issue between the parties was, and it was so submitted to the jury, whether *Frederic Christian*, in his life time, had given the slave to the wife of the plaintiff, *Weld*, who is the present defendant. This is the matter in controversy in this suit. It is true the parties to the record were not the same. But the parties in interest were the executor and the present defendant, and the present plaintiff claims title through the defendant in that suit.

*Mr. Matthews*, the executor, was examined as a witness on the trial in the Court below.

It appears there were two trials of this cause in the Courts of Tennessee. The judgment on the first was reversed by the Supreme Court. Subsequent to the first trial, the present plaintiff, *Johnson*, had married the daughter and only heir of *Frederic Christian*. On the second trial he was present, but took no part in the business of the trial. He signed the appeal bond of *Wheaton*, and judgment was rendered against him on the appeal, as surety for its prosecution. All the witnesses were summoned by the witness' direction, and, we infer from his testimony and his presence at the trial, that he controlled the management of the cause.

The executor at this time having the administration of the estate, as we understand the decisions of the Courts of Tennessee, the present plaintiff, in the right of his wife, could only claim this slave from the executor, upon whom the law casts the personal estate. It is held by the Supreme Court of that State, that distributees cannot recover their distributive portions without an administration on the estate of their intestate, and a person in possession of an intestate's personal property can hold it against any person but a creditor and an administrator. *Thurman* v. *Shelton*, 10th Yerger's Reports, 383 ; 2 Blackstone's Com. 496 and 511.

Thus the proper party in interest was substantially the party litigant in relation to the title of the slave, and the plaintiff in this suit acquiring his title through him, ought to be bound by a judgment rendered against him as owner.

We consider the executor, throughout these proceedings in the Courts of Tennessee, as a privy to *Wheaton*, he being a mere bailee and nominal party only. This privity in estate binds the party by the judgment as effectually as if he had been a technical party to the record.

The suit in *replevin*, in which the executor was the plaintiff, does not appear to have been tried, no ulterior proceedings having been had in it.

Such is the result of an examination of this question, according to the laws of Tennessee, where all the parties resided and the slave in dispute lived.

The article 2265, of our Code, is a literal copy of the article 1351 of the Code Napoleon. This article, and the others of the same section, must not be considered as a strict, arbitrary and technical enactment, but as one declaratory of the conditions of the *res judicata* as a principle of jurisprudence. The same provision existed in the laws of the Partidas, and prevails, under the Civil law, as a conservative element in the administration of justice. In a restricted sense it would be inoperative and tend rather to stir up than to terminate litigation. These conditions are *eadem res eadom causa* and *eadem conditio personarum.* The demand must be between the same parties. The article does not say that the parties to the record must be the same, and it becomes a question of jurisprudence as to what constitutes the interest which is considered as identifying parties in one suit with those in another. We know that nothing is more common in mercantile business than to test legal questions, of debt and property, in the names of other parties than those really interested. The factor who deals in his own name with the property of his principal—the consignee, whose action against the carrier is of every day occurrence—the merchant, who insures in his own name the shipment in which, perhaps, he has not the slightest interest, but which has been put entirely under his control—all these parties institute and defend suits for their principals relating to the business under their charge. It cannot be supposed for a moment that their principals, who submit to have their rights tested in this form, are not bound by the adjudications which

they themselves, through their agents, have provoked. As a matter of law, the bare statement of the proposition refutes itself, and as a matter of common justice, it is revolting to our moral sense.

These conditions of the *res judicata*, established in order to ensure the ends of justice, have been viewed, in the jurisprudence of the Civil Law, in the light most favorable to attain it. The effect of the *res judicata* is consequently held to extend to the successors of the *ayans cause*, the assignees of the parties, and to all those who claim through them. In questions relating to the status of persons, to servitudes and indivisible rights, the law, from necessity, has created exceptions to the general rule, where the suit has been publicly tried and the judgment is without collusion.

*Toullier*, in speaking of the principle that the possessor is presumed to be the owner, says:

"It results from this principle that judgments, rendered without collusion, against the apparent owner, relating to the thing of which he is possessed, acquire the force of *res judicata* against the true owner when he is restored to his rights, as also the judgments in favor of the possessor, relating to the thing, inure to his benefit. It cannot be said that a judgment of this kind is *res inter alios acta*. It is always the same moral person, which passes from one individual to another, as is the case with all those succeeding under a particular title. The true owner must take the consequence of letting his rights remain in the name—*sur la tête*—of another person, who is clothed with the apparent ownership." Toullier, vol. 7, 28.

It is sufficiently evident, says the same author, that the authority of *res judicata* takes effect for and against those who, without being personally parties to the judgment, are represented by a mandatory, or attorney in fact, by their tutors, curators, &c. In all these cases there is a moral identity of the parties. Vol. 10, 198.

There may be a physical difference of parties to suits, but at the same time a legal identity. If, without figuring as a party to the record, I am represented by a party to it, the law considers both as one person, and the judgment rendered is obligatory on both. Marcadé on Article 1351, vol. 5, p. 190, 191. See also Pothier, *Obligations*, 900; also Zachariæ, vol. 5, p. 767.

The Court of Cassation has always determined cases in which the plea of *res judicata* has arisen, in the sense of these authors. Indeed, any other doctrine would render litigation interminable.

If then the executor was the proper party in interest in this suit, the circumstance of its having been conducted in the name of his baillee, *Wheaton*, would not prevent the judgment from having the effect of *res judicata* as to his rights. The plaintiff, claiming through him, has no greater right than he had.

By an agreement of counsel, the plea of *res judicata* was tried under the general issue, and the District Judge decided thereon as we have stated.

If this verdict and judgment of the Court of Tennessee bound the parties there, it ought to be obligatory on them everywhere.

I have always understood it to be clear law, says *Lord Kenyon*, in the case of *Ogden & Folliot*, that all judicial acts done in one country over the property of the subjects within their jurisdiction, are conclusive on the property of the parties in another country. 3 Durnford & East, 407.

Whether the laws of Tennessee, or those of Louisiana, are considered as

JOHNSON
v.
WELD.

regulating the rights of the parties to this suit, the case is with the defendant, and judgment must be rendered accordingly.

It is, therefore, considered by the Court, that the judgment of the District Court be reversed, and judgment be rendered for the defendant, with costs in both Courts.