Succession of Lehmann.

## No. 10,222.

### SUCCESSION OF LOUISE MATHILDE LEHMANN.

1. Enquiries touching the legality of an executor's appointment cannot be raised by a purchaser of property of the succession at judicial sale, under an order of court apparently regular, and for the purpose of discharging debts of the deceased and costs of administration.

2. While actually exercising the office of executor, he must perform its duties, and the illegality of his appointment will not vitiate his acts.

3. Purchasers at succession sales are not bound, at their peril, to enquire when the property is advertised by an executor, whether the will appointing him, which is *valid on its face*, is voidable.

| | |
|---|---|
| 41 | 987 |
| 44 | 49 |
| 44 | 423 |
| 41 | 987 |
| 47 | 780 |
| 41 | 987 |
| 48 | 304 |
| 48 | 1261 |
| 49 | 82 |
| 41 | 987 |
| d52 | 1521 |
| d52 | 1761 |
| e52 | 1762 |
| 41 | 987 |
| 106 | 300 |
| 41 | 987 |
| o110 | 832 |
| 41 | 987 |
| 114 | 697 |

4. When a succession is in the hands of an executor and in process of liquidation, the interest of the heirs being merely contingent, they need not be consulted, or heard, before as application for sale is made, as a condition precedent to the validity of the title of a purchaser.

5. When the poceeds of a sale made by an executor to pay debts are not *greatly* disproportionate to the debts, the sale will not be annulled.

6. Acts of procuration under private signature become authenticated when attached to and form parts of judicial proceedings, or are incorporated in an authentic act.

APPEAL from the Civil District Court for the Parish of Orleans. *Monroe, J.*

*Frank N. Butler,* for the Testamentary Executor, Plaintiff and Appellant.

1. Where there is satisfactory proof of existing debts approximating the appraised value of the property belonging to the estate, and the movables are totally inadequate to discharge the debts, it is the duty of the executor to apply to the court for an order to sell the movables and immovables, to pay such debts. Particularly is such an application and order appropriate when the universal legatee joins the executor and expressly requests and consents thereto. C. C. Arts. 1668, 1669, 1670, 1164, 1165 and 1166. C. P. Arts. 983, *et seq.*

2. No attorneys for absent heirs need be appointed in a testate succession where there are no forced heirs and when all the estate after payment of debts, is bequeated to a universal legatee. 12 La. 73; 15 La. 527; 2 Ann. 206; 3 Ann. 226.

3. A purchaser, in good faith, at a judicial sale of succession property, made under an order of a court of competent jurisdiction to pay debts is fully protected by the decree ordering the sale, secures a perfect title, and has no concern or interest in raising any question either as to the validity of the will, the reality of the debts, the rights of heirs, or the regularity of any proceedings had in the succession preceding the order of sale. 8 La. 424; 13 La. 436; 15 La. 182. 2 Ann. 466; 15 Ann. 250; 18 Ann. 485; 27 Ann. 563; 28 Ann. 755. 2 Peters: U. S. R. 168; 10 Peters, 445; 1 Wallace, 634.

4. All informalities in probate proceedings for the sale of land are prescribed by five years, and, therefore, all defects in the powers-of-attorney complained of by Mrs. Domecq, are or soon will be, cured by prescription. 21 Ann. 584.

5. In the exercise of its equitable powers, the court may well grant a reasonable delay to enable the executor to have such powers-of-attorney duly authenticated.

*Alfred Grima* for Defendant and Appellee:

1. A will made by a minor, under sixteen years, is null. C. C. 1476; C. N. 903; 1 Demolombe Don. p. 439, sec. 410; 3 Marcadé, p. 395, sec, 493; 11 Laurent, par. 143, 146.

2. The doctrine of the protection of purchasers in good faith, by the order of sale in matters of judicial sales, does not apply to this case; the illegalities in the title offered are set up before payment of price or entering in possession, and must be adjudicated upon by the court. 16 Ann. 422, succession of Weber; 9 Ann. 560; 11 Ann. 109.

3. An act of procuration for the sale of immovables in Louisiana, which procuration was acknowledged before one style an *Alderman* in Pennsylvania, and without a single witness to the act or acknowledgement, has no effect as an authentic act in this State. C. C. 2234; 39 Ann. 1050, Leibe vs. Hebbersmith and cases cited.

4. An act of procuration for the sale of immovables in Louisiana, executed before a notary in Germany, and without any witnesses to the same, has not the effect of an authentic act in Louisiana. C. C. 2234: 14 Ann. 84: Story Conf. of L., sec. 435.

5. The remark in the appellant's brief that there will be five years on the 17th of December, from the date of the most recent said procurations, is not a plea of prescription, and even if pleaded, prescription of five years could not confer title to an immovable.

*Jerome Meunier* and *Chas. F. Claiborne* on the same side.

The opinion of the court was delivered by

WATKINS, J.   Three of the purchasers of immovable property at succession sale, resist a rule taken upon them by the testamentary executor, to compel their compliance with the terms of adjudication and acceptance of title.

Their objections are :   1st. That the testament of the decedent is absolutely null, because she had not attained the full age of sixteen when it was made, "and, therefore, the appointment of the executor in said will, and all proceedings founded on same, as well as the confirmation of said executor, are null and void:"   2nd. That there are heirs of the deceased who are absent from the State, and not represented therein, who have an interest in contesting the validity of said testament, and who are not made parties to the proceedings ancillary to the sale.   3rd.   That the amount of property sold was considerably in excess of the debts of the succession and the sale was unwarranted and illegal.

In addition to the foregoing defenses which are common to all, the respondent, Mrs. Adele Domecq, urges that the piece of property which was adjudicated to her was previously purchased for the deceased testatrix through " certain judicial proceedings " in the Civil District Court, and the title was passed before a notary, in which the vendors were ostensibly represented by attorneys in fact whose procurations were not authentic in form, and did not furnish complete evidence of their signatures.

For all of these reasons they insist that the profferred titles are not good.

I.

In regard to the first objection the facts are these :   Louise Mathilde Lehman died, leaving a will in which she instituted Widow E. H. Lehman her universal legatee, and appointed Paul Lacoste testamentary executor.   The will was duly probated and letters testamentary were issued to the testamentary executor.   An inventory was taken, and the property appraised at $4500.

On showing to the court the existence of about $3000 of debts due by the deceased, in addition to the costs and expenses of administration, and that he had no funds to pay same, the executor represented that a

sale of the movables, and so much of the immovables of the estate as would meet and pay the same, should be made, and the judge so ordered.

In the petition of the executor the universal legatee joined, alleging that she possessed no means with which to pay the debts and charges against the succession.

Conceding for the argument that the testament is null for want of capacity of the infant testatrix to make it, this objection goes merely to the *capacity* of the *testamentary* executor.

Then, we have for answer this question: Can a purchaser of succession property at judicial sale, made under an order of court, on the joint petition of a testamentary executor and universal legatee, showing an apparent necessity therefor, in order to meet and discharge the debts of the deceased, and the cost and expense of administration, urge the nullity of the testament appointing the testamentary executor as a reason for her non-acceptance of the tendered title.

We think not; for it has been held that "enquiries touching the legality of a syndic's appointment are irrelevant" in an injunction suit by the heirs of an insolvent against an execution of a twelve months bond. Say the court: "While actually exercising the office he must perform its duties, and the illegality of his appointment will not vitiate his acts." Cloutier vs. Lemée, Syndic, 33 Ann., 307.

It has been held to be "elementary that the mere illegality of the appointment of an administrator will not vitiate the acts done under it." Say the court: "This is so true that the law will not allow a suspensive appeal from a decree appointing such officers; but it declares that such decree shall have immediate effect notwithstanding the appeal, and, therefore, regardless of the legality or illegality of the appointment." Succession of Altemus, 32 Ann., 367; Succession of Dugart, 30 Ann. 268; 21 Ann. 543; 10 Ann. 670; 5 Ann. 156, 161; C. P., 1059, 580.

Not only is this general proposition sustained by ample authority, but it has been applied to this particular class of cases; for in Green vs. Baptist Church of Shreveport, 27 Ann. 563, the case was stated thus:

"Plaintiff claims that her birth destroyed her father's will; that the executor became thereby without power to act, and that the sale made by him conveyed no title. It is in evidence that Robert Green died insolvent. It is admitted that the proceeds of the property went toward the payment of his debts.

"*Prima facie* the title acquired by the purchaser was a good one. The property had been sold under an order of a competent court, made at the instance of one apparently authorized to apply for it. The records

of the country showed that the executor was exercising the functions of his office at the time he asked for the order of sale.

"Purchasers are not bound, at their peril, to inquire when property is advertised for sale by an executor, whether anything has occurred *outside of court* to destroy the will while he is acting."

It is equally true that the purchaser is not bound to institute enquiries into the validity of the will appointing the executor, nor into the *capacity* of the testatrix to make the will, when it is *valid on its face.*

In succession of Condon, 23 Ann. 755, the court said of a purchaser of succession property who was ruled to accept the proffered title :

"It is well settled that under such circumstances the purchaser gets a good title, all incumbrances being transferred from the thing sold to the proceeds which are under the control of the court. Appellant has, raised objections, and discussed matters in which he has no interest."

The defendants in this suit occupy just the same situation. The testamentary executor was appointed in a testament which was apparently valid, and which was formally executed and probated. An order of sale was petitioned for by him, and the universal legatee named in the will, and same was granted by the judge, directing a sale of the property of the succession to pay its debts and charges. Thereunder a sale was made, and the property adjudicated to the defendants, in separate parcels. The alleged vice in the will might divest the title of the universal legatee to the *residuum* of the proceeds of sale, but the consequent illegality of the executor's appointment cannot affect the title of property sold, and constitute the purchaser one in bad faith.

## II.

In this case it is a fact conceded that the deceased left no forced heirs, and it is only contended that there are some collateral relations, who are absent from the State and unrepresented therein, and who were necessary parties to the proceedings antecedent to the sale.

It is not suggested that *absent heirs* have any higher rights than those who are present, or represented ; nor that collaterals have any higher rights, or are entitled to other notice that are forced heirs. They stand on a level.

We said in *Succession* of *Hood*, 33 Ann. 46. "When a succession is in the hands and under the control of an executor, or an administrator, and is in process of liquidation, the interest of the heirs, minors or majors, being merely contingent, *deducto œre alieno*, neither *must* be consulted, or heard, before an application is made by the succession representative, as an essential condition precedent, for the validity of an order of sale to pay debts."

This doctrine is sanctioned in repeated decisions of our predecessors, and is settled law. 24 Ann. 530; 15 Ann. 675; 19 Ann. 528; 18 Ann. 496; 28 Ann. 269. Hence the mere absence of the collateral heirs of the decedent did not effect the validity of the sale. If a sale of succession property could not be effected without the *presence* and concurrence of the collateral kindred of a deceased insolvent, the recourse of his creditors would be poor indeed.

### III.

The third ground of defendant's objection is not well taken. The proceeds of sale are not seriously disproportionate to the debts of the deceased, and the costs and expenses of administration. The total proceeds of sale are $5085, and the debts and charges are $3595 24. The excess of proceeds is $1490.

In the estimate of expenses of sale the cost of advertisement is not taken into account; nor are the *future* costs of final account and settlement. How was the executor to know that the property would bring at sale $600 over and above the appraisement, as it did? He could not. Under the circumstances the excess is trivial, and does not vitiate the sale.

Succession of Dumestre, 40 Ann. 572, is not applicable. In that case the value of the property sold was $21,000, and the debts aggregated $10,000 or less. Minors had a half interest in the property. We viewed it as a partition proceeding in disguise, without the prescribed forms of law having been attended to, and that its covert purpose was to divest illegally, the title of the minors.

### IV.

The complaint of the acts of procuration is not well founded. According to defendant's own judicial admission in her answer, the decedent's deeds were the offspring of certain *judicial* proceedings through which her title was evolved. They certainly authenticated the powers of attorney, and same cannot now be questioned. 3 Ann. 268; 32 Ann. 264,

The judgment appealed from is erroneous. It is therefore ordered and decreed that the judgment appealed from be annulled and reversed; and it is now ordered that plaintiffs rule be made absolute at defendant's cost in both courts.