No. 10,988.

MRS. CORA E. P. CALHOUN, EXECUTRIX AND TUTRIX, vs. CHARLES A. PIERSON,

AND

SAME PLAINTIFF vs. CHARLES H. TEAL,

AND

SAME PLAINTIFF vs. ANDREW THORPE.

CONSOLIDATED.

---

1. An act of sale executed by the testator to his sister, of his undivided interes and share in the succession and property of his deceased mother, will operate as an estoppel against a claim made by his child to an interest in the estate and property of the grandmother, through the father and testator, as an heir.
2. The admissibility of a private writing of any kind must be tested and determined before it is admitted and filed in evidence; and until proof of its execution is first administered, if such proof be required by the adverse party, it can not be introduced and filed in evidence, it matters not what may be the object that is expected to be accomplished thereby.

Calhoun vs Pierson.

3. After a son has unconditionally accepted the succession of the father, and has accepted and used as unconditional heir certain twelve months bonds that had been executed by adjud'catees of his succession property, such son and heir is conclusively barred and estopped from setting up an antecedent title derived from another source, as against the adjudicatees of the property and their assigns and transferees.

APPEAL from the Twelfth District Court, Parish of Grant. *Blackman, J.*

Hunter & Hunter for Plaintiff and Appellant:

ON ESTOPPEL.—An action for the revendication of succession property can not be grafted on an opposition to an account of an administrator. One can not be estopped by not doing what he is forbidden to do. L. W. Carthy vs. J. D. Kerr, Administrator, 15 An. 228; Succession Amelia Sanchez, 41 An. 504; Succession Susan A. Scott, 41 An. 668.

Allegations in previous suit, ending in non-suit, and leaving the parties in the same position, can not form estoppel. Smith vs. Harrell, 16 An. 190.

Acquiescence in a judicial sale to prevent a party from claiming immovable property ought to be very clearly shown. Poché vs. Theriot, Sheriff, 23 An. 138.

Heirs are not bound by receipts given by them to executors without knowledge of the fraud which has been perpetrated by the latter. Michard vs. Girard, 4 How. N. S. R. 503.

A judicial partition and subsequent acts of the parties, the judgment having become final, acts based on error of fact can not form estoppel. Chatenond vs. Hebert, 30 An. 405.

A party is not estopped by his pleading when the averment was made without knowledge of the real fact underlying the controversy—especially when that real fact was within the knowledge of the adverse party. Watkin vs. Cathorn, 33 An. 1194.

One who opposes every item of an administrator's account can not be said to ratify a certain adjudication of property, the proceeds of which are sought to be distributed by the account. Succession of Henry Tabary, 31 An. 409.

"The doctrine of estoppel, however apparently emphatic, is full of exceptions, which vary according to circumstances, and was never designed to apply to a case like the instant one, in which the declaration made had led no one astray and occasioned damage to nobody. Stockmeyer vs. Oertling, 38 An. 102; Succession Harris, 39 An. 443.

"The Supreme Court of the United States has said: 'The primary ground of the doctrine is that it would be a fraud in a party to assert what his previous conduct had denied, when, on the faith of that denial, others had acted. The element of fraud is essential either in the intention of the party estopped or in the effect of the evidence which he attempts to set up.'" Brant vs. Virginia, 93 U. S. 335, quoted in 39 An. 443.

A party is not estopped as agent by admissions made individually. DePoret vs. Gusman, 30 An. 933.

The fact that a person was present at a sale, without objecting, does not waive informalities. Humphries vs. Brown, 19 An. 159.

T. H. Thorpe and Andrew Thorpe for Defendants and Appellees:

1. When the owner of an immovable is present at a public sale of the same and

Calhoun vs. Pierson.

tacitly assents to its being sold as the property of another, he is thereby estopped from subsequently disputing the title and possession of the *bona fide* purchaser. 30 An. 1251.

2. Parties are estopped from denying admissions or declarations deliberately made by them in judicial proceedings. 30 An. 838.

3. A creditor or heir of a succession, who has received his share of the proceeds of succession sale of lands, can not be heard to claim the annulment of the sale and assert his title to the land. 32 An. 121; Ibid. 962; Ibid. 979; 40 An. 186.

4. A husband who signs an act of sale of property to his wife, containing recitals as to title, consideration, etc., is estopped from contesting the admissions imported by such recitals. 40 An. 580.

5. One who claims the proceeds of a judicial sale thereby makes a judicial admission that the sale was valid. He is, therefore, estopped from attacking the sale ·as a nullity, unless he proves that his admission was made through error of fact. 31 An. 100; Ibid. 469; 6 So. Rep. 536; 42 An. 522; R. C. C., Art. 2291.

---

The opinion of the court was delivered by

WATKINS, J.   The three consolidated cases are petitory actions, instituted by the widow of William S. Calhoun, suing in the double capacity of executrix of his last will, and of tutrix of his minor child, against the several defendants, claiming ownership, severally, by *mesne* conveyances from the succession of said William S. Calhoun's father, Meredith Calhoun, deceased.

The claim of title is further supported by the averment that the lands in controversy were illegally inventoried as property of the succession of Meredith Calhoun, and, therefore, illegally sold to the various adjudicatees thereof at probate sales made by Howard McKnight, administrator, in 1882 and 1883, and prayer is made for the nullity of said sales to be judicially decreed, and a cloud on the title removed.

The lands claimed aggregate in quantity eleven hundred and sixty (1160) acres—of which it is alleged that William S. Calhoun entered from the government, as will be shown by patent certificates, 720 acres; and that Mrs. Mary S. Calhoun entered the remaining 440 acres, likewise evidenced by patent certificates.

Properly refined, plaintiff's claim and pretension are (1) that the minor of William S. Calhoun, whom she [personates as tutrix, inherited the *entire* property from her father at his death, and (2) that her father acquired 720 acres of the land by purchases made in his own right from the government, and the remaining 440 acres by inheritance from her mother, Mary S. Calhoun, deceased.

*Contra,* the claim made by the defendants is that at the aforesaid

succession sales made in 1882 and 1883, as the property of Meredith Calhoun, deceased, the property was adjudicated in subdivisions to various persons upon terms of credit, who executed their several and respective twelve months bonds for the purchase prices thereof, with security of mortgage recognized upon same.

That subsequently William S. Calhoun *unconditionally* accepted the succession of his father, Meredith Calhoun, and received said bonds as part of the assets thereof, and gave them in payment to his wife, the present plaintiff.

That, being a judgment creditor of the father, Meredith Calhoun, the defendant Pierson proceeded by attachment and garnishment against William S. Calhoun, the son and unconditional heir, as his *personal* debtor, and subjected said bonds to the payment of his judgment, and on the execution thereof he became the purchaser of the said lands in part, and Teal, another defendant, became a purchaser of part; and, subsequently, he (Pierson) conveyed a portion of those he acquired to the defendant Thorpe, and he, in turn, conveyed same to Teal.

Independently of mere averment, the mooted and principal question is, whether the property *really* belonged to the succession of *Meredith* Calhoun at dates of sales made in 1882 and 1883—for on that the title of defendants depends. Therefore, they averred in their answer, various matters of estoppel *in pais*, and by deed, as well as by conduct, the effect of which are to preclude William S. Calhoun, as well as persons claiming under him, from ever disputing the title of Meredith Calhoun as their author.

Without enumerating them, we will dispose of them *seriatim*, as stated in plaintiff's brief.

I.

1. The first estoppel is averred to exist in an act of sale executed by William S. Calhoun to his sister, Miss M. M. Ada Calhoun, on the 27th of May, 1873, conveying to her *all his interest* in and to the property of the succession of their mother, Mary Smith Calhoun.

If, in point of fact, such a sale was made, the interest of the plaintiff in that portion of the land which William S. Calhoun is alleged to have acquired from the succession of his mother, Mary Smith Calhoun, passed thereby to his sister, and therefore could not have been inherited by his child.

The record discloses the existence of an act of sale, notarial in

form, that was executed, as stated in defendant's plea, by William Smith Calhoun in favor of his sister, Miss Marie Marguerite Ada Calhoun, whereby he sold, conveyed and delivered to her "all and singular his undivided one-half interest, and all his right, title, interest, claim and demand of every nature and kind whatsoever, in and to the succession and estate of his deceased mother, the late Mary Smith Taylor, deceased widow of Meridith Calhoun, late of the parish of Rapides, deceased, without exception or reservation * * * and, also in and to all the real estate, property, rights, credits and effects belonging to the estate or succession of his deceased mother, the said Mrs. Mary S. Calhoun, or in which it may appear that said succession or estate is or may be entitled or interested."

The consideration for this sale is stated to be the sum of $35,000 in cash, and the act of sale appears to have been duly recorded in the book of conveyance in the parish of Grant, wherein the property is situated, on the 3d day of June, 1873.

To this deed the plaintiff offered, in explanation and contradiction, what her counsel terms a counter letter, in rebuttal. The only signature which it purports to have, is that of the sister, Miss M. M. Ada Calhoun, who is named as vendee in the deed under consideration. It does not bear the signature of the vendor, W. S. Calhoun.

Amongst other things it contains the following recital, viz.:

"Whereas, on the 27th of May, 1873, by notarial act, William Smith Calhoun did sell, transfer and assign all and singular his rights, title and interest in and to the succession of his mother, Mrs. Mary Smith Calhoun, * * * Now, I, M. M. A. Calhoun, for and in consideration of the above, do by these presents promise and bind, and obligate myself to pay and deliver over one-half the entire net proceeds of the succession of our mother, Mary Smith Calhoun, deceased, upon the final settlement thereof," etc. It then concludes with this pertinent and significant phrase, viz.: "Said William Smith Calhoun is to have and receive one hundred dollars during each and every month, on account, and in advance of *his share in said succession.*"

This document bears date July 5, 1873, only a few weeks subsequent to the execution and registry of the act of sale in question. On the trial no proof was offered of its execution, even by Miss Ada Calhoun, or of its authenticity. And it was only offered and filed in

Calhoun vs. Pierson.

evidence in this case on October 3, 1891, after the party to be affected thereby, beneficially, had been evidently dead for many years, and long since the rights of the defendant had been acquired in the premises. And this document was admitted in evidence by the judge *a quo* without any evidence of its execution, and over the objection of defendant's counsel.

On this subject plaintiff's counsel makes this statement, viz.:

" That plaintiff offered in rebuttal the counter letter of Mrs. Lane. To this offer counsel for the defendants interposed the objection that it was a document under private signature and *no proof of the signature had been made;* the court admitted the document and a bill was reserved on the record.

" If the suit had been one to enforce the agreement contained in the counter letter the objection would be good, *but when the document was offered merely to show that there was a counter letter, and that the sale was not real, but fictitious, we do not deem that the proof was required.* Or if the objection had come in the shape of an exception to plaintiff's right to sue, because W. S. Calhoun had parted with his interest in his mother's succession, it might have required proof of the signature.

" The answer pleads the sale as an estoppel, and a defence which might have been good, if pleaded otherwise, does not necessarily operate as an estoppel." Brief, p. 7.

We are clearly of opinion that counsel's argument is not sound, and that the judge's ruling was erroneous. .

The question raised was one of the *admissibility* of the document to be filed in evidence. Until proof of the *execution* of a private writing is first administered, if such proof be insisted upon by the adverse party, it can not be introduced in evidence—it matters not *what* may be the object intended to be accomplished by its introduction. This is elementary. C. P. 483; R. C. C. 2245.

We must decline to consider that paper, thus denuded of all proof of its verity or authenticity, as having any effect upon the act in question.

Disregarding that paper, the estoppel of the act is full and complete.

II.

The second and third estoppels which are urged may be considered as one.

They are to the effect that, subsequent to the unconditional ac-
ceptance of the succession of Meredith Calhoun by his son and heir,.
William S. Calhoun, in 1887, he received the twelve months bonds
that the various adjudicatees had executed for lands purchased at
the succession sales made in the estate of Meredith Calhoun in 1882
and 1883, and gave them to his wife, the present plaintiff, in part
satisfaction of her claims against him, in the month of February,
1888.

The estoppel predicated upon the aforesaid acts is, that because
W. S. Calhoun had, *as heir of his father*, received and used the pro-
ceeds and avails of the property which had been *sold as that of the*
*father's succession* he, and those claiming through him, are precluded
from setting up an antecedent title, as against the adjudicatees and
their transferees and assignees, of the property.

Admitting the facts to have been substantially as stated, counsel
makes the subjoined explanatory statement on pages 9 and 10 of his
brief, viz.:

"C. A. Pierson had a judgment for $1000 against the succession of
M. Calhoun.   *W. S. Calhoun did take the bonds from Mrs. McKnight.*
Pierson garnisheed the parties who had given those bonds and obtained
judgments against him, and seized and sold out the lands for which
they had given the bonds; some of them being the lands now sued·
for in those cases; the proceeds were credited on his judgment.
*This 1160 acres, and a lot more of the lands not included in this suit,.*
*were sold under his judgment,* and, after paying enormous costs, there·
was still a balance due on his judgment.

*"W. S. Calhoun had meanwhile made a dation in payment of the·*
*bonds to his wife, and that had been recorded,* and is offered in evi-
dence here by him, and forms the basis of his next plea of estoppel.
Neither he nor the sheriff ever had possession of the bonds, and how
he could have found any sanction in law for his extraordinary legal
proceedings or any court to give him judgments, under the circum-
stances, is a mystery we can not fathom.

"Neither W. S. Calhoun nor Mrs. Calhoun ever derived any ben-
efit from the bonds, except so far as they may have been benefited
by the ruinous credits on his judgment.

"He is sued here for the return of 520 acres of land, which is ad-
mitted to be worth $10 an acre, or $5200, which he bought at one of
those sales under his judgment, and in his answer he asks that if he

is evicted, plaintiff be required to return him the purchase price,. which he fixes at $540, a little more than $1 per acre. And yet he comes into court and has the hardihood to urge that because W. S.. Calhoun took the bare pieces of paper called,twelve months bonds, and transferred them to his wife, they are equitably estopped from recovering the lands of which he has despoiled them under the bare forms of law, and he himself offers in this record the evidence upon which the foregoing statements are made!"

Giving the plaintiff the full benefit of her counsel's statement, and it is quite impossible to give her any relief on this action against strangers, and to all appearances innocent third persons.

That W. S. Calhoun did receive the bonds is a fact confessed. That he had previously unconditionally accepted the succession of Meredith Calhoun as heir is also a fact admitted. And it is also admitted that he subsequently transferred said bonds to his wife. The hardship and injury might be appropriately considered if the plaintiff were claiming any right under the succession of *Meredith* Calhoun; but, claiming as she does under the succession of *Mary Smith* Calhoun, to which she avers the property belonged, and from which the deceased testator, William S. Calhoun, inherited it at her death, these questions are *res inter alios acta* and impertinent to the issue of estoppel pleaded as destructive of William S. Calhoun's claim of title.

The judge *a quo* decided the consolidated causes in favor of the defendants, and signed these several judgments. Being of the opinion that he decided the causes correctly, they are respectively affirmed.