No. 2627

Second Circuit

---

CLARK v. NORRED

---

(June 20, 1926.  Opinion and Decree.)
(June 30, 1926.  Rehearing Refused.)

---

(*Syllabus by the Editor.*)

**1. Louisiana Digest—Evidence—Par. 112, 113; Lost Instruments—Par. 4.**

Title to real estate may be shown by parol testimony upon proving the loss of the deed and the contents thereof.

**2. Louisiana Digest—Evidence—Par. 112; Lost Instruments—Par. 4.**

Although the contents of a private deed to real estate lost or destroyed may be proved by parol it must also be proved that such a deed had been executed.

**3. Louisiana Digest—Evidence—Par. 208.**

Written instruments under private signature are not admissible in evidence until the signature thereto is proven.

**4. Louisiana Digest—Evidence—Par. 59, 208; Lost Instruments—Par. 4.**

If the defendant denies having signed a deed to real estate which had been lost or destroyed and there is no evidence in the record to show that she did sign it, the deed is not proven.

**5. Louisiana Digest—Petitory and Possessory Actions—Par. 13, 15.**

A widow who owned a one-half undivided interest of her husband's estate at his death has a sufficient showing of title to bring petitory action.

**6. Louisiana Digest—Judgment—Par. 153, 207.**

Where the court has jurisdiction of the case and the minors are properly represented a judicial sale made after a complete hearing, in the absence of fraud, binds the minors as if they had been majors.

**7. Louisiana Digest—Judgment—Par. 172.**

Matters once determined in a court of competent jurisdiction may never again be called in question by parties thereto.

Appeal from the Third Judicial District Court of Louisiana, Parish of Jackson. Hon. S. D. Pearce, Judge.

Action by Mrs. Nannie May Clark, et al., against S. B. Norred, et al.

There was judgment for plaintiffs and defendants appealed.  Judgment affirmed in part and reversed in part.

E. L. Walker, of Ruston, attorney for plaintiffs, appellees.

W. J. Hammon, of Jonesboro, Barksdale, Warren & McBride, of Ruston, attorneys for defendants, appellants.

ODOM, J.  H. J. Glover died in the parish of Jackson on November 27, 1903, leaving a wife, Mrs. Nannie May Glover, and three children as his sole heirs, to-wit: Henry J. Glover, Homer T. Glover and Walter L. Glover.

He owned, at the time of his death, the following described land belonging to the community which existed between him and his said wife, to-wit:  SE¼ of NW¼; SW¼ of NE¼; NE¼ of SW¼; and the W½ of the NW¼ of SE¼ of Section 5, Township 15 North, Range 3 West, containing 140.00 acres.

About three years later Mrs. Glover married one E. D. Quick who, with his

wife and the three Glover children, who were all minors, went to Sabine county, Texas, to reside.

E. D. Quick died about 1920, and Mrs. Quick subsequently married a man named Clark.

Mrs. Clark, and her children above named, all of whom are now of age, reside in the state of Texas.

In August, 1925, after the Glover children had attained the age of majority, they, together with their mother, then Mrs. Clark, brought this suit against the defendants, alleging that they are the owners and entitled to the possession of the 140.00 acres of land above described and that the defendants claimed to own and were in possession of the land under certain deeds and transfers which, they allege, were null and void for reasons specifically set out and which they ask to be cancelled and erased from the records and that they be recognized as the owners and be placed in possession of said land.

The defendants, in answer, denied that plaintiffs are the owners of the land and set up title in themselves.

There was judgment in the lower court in favor of the plaintiffs and against the defendants as prayed for, from which judgments the defendants prosecute this appeal.

## OPINION

It is undisputed that plaintiffs are the owners in common of the land in dispute, unless their title thereto has been legally divested.

As a basis of title, they allege and show that said land was purchased by H. J. Glover during the existence of the community between he and his wife, now Mrs. Clark, one of the plaintiffs, who, at the time of his death, owned an undivided half interest in it by virtue of the community, the other undivided half descending to his three children, the other plaintiffs herein.

It is the contention of the plaintiffs that they have not been divested of title.

It is defendants' contention, on the contrary, that plaintiffs have been divested of title and that they are now owners of the land.

There is no deed of record or in existence, so far as the record shows, evidencing a sale by Mrs. Clark, the widow Glover, of her interest in the land. It is contended by defendants, however, but denied by her, that in May or June, 1913, she executed a deed to her interest in the land to one M. E. Norred.

The serious and sole question involved in the case, so far as Mrs. Clark is concerned, is whether she did in fact execute a deed to Norred.

It is not seriously denied by Mrs. Clark that there was at one time, about May or June, 1913, as alleged by defendants, a deed in existence purporting to convey her interest in the land to Norred with her name appended thereto as vendor. She says that she has no knowledge of such a deed and that if there was such the writing of her name thereon was without her sanction or authority and was a forgery.

We conclude, as did the district judge, that Norred at one time was in possession of a deed purporting to convey to him Mrs. Clark's interest in the land; and we further conclude, as did the district judge, that the defendants failed to prove and that under the circumstances they cannot

prove Mrs. Clark's genuine signature was attached thereto or that the deed was executed with her sanction or authority.

It is not contended by defendants that Mrs. Clark authorized anyone to execute the deed for her, but they base their cause upon the proposition that she signed the deed in person, and upon that they must stand or fall.

As stated, the alleged and purported deed was not recorded, and it could not be produced on the trial of the case. Norred says he gave the deed to a lawyer; the lawyer says he has no recollection of ever seeing it or having it in his possession. Mrs. Clark having denied that she signed the deed, the defendants attempted to prove that she did.

As bearing upon the point, it is well to recite certain incidents which occurred subsequently to the date on which Mrs. Glover, now Mrs. Clark, was married to E. D. Quick and moved to the state of Texas.

As stated, the widow Glover married E. D. Quick about three years after the death of her husband, Glover. After their marriage they went to Sabine county, Texas, to reside. After reaching Texas Quick concluded to purchase a home for himself and family, and being without means of his own he began negotiations for the sale of his wife's land in Louisiana in order to raise the necessary funds.

M. E. Norred, who resided in Jackson parish, Louisiana, where the land is dispute is located, agreed to purchase the land at an agreed price to be paid in cash. The negotiations for the sale were carried on by Mr. Quick in person. He had his wife to execute a deed conveying her undivided half interest in the land together with one other forty-acre tract which she owned individually to Norred, the deed reciting a cash consideration. This deed was sent to a bank in Jonesboro, Louisiana, to be delivered to Norred upon payment of the price in cash. Norred, it seems, was unable to raise the cash, and the deal was called off and the deed returned.

Mrs. Clark, then Mrs. Quick, admits that she signed that deed.

Pending these negotiations, E. D. Quick purchased some land in Texas in his own name from A. L. McGown, agreeing to pay the purchase price thereof out of the proceeds of the sale of his wife's property in Louisiana. The cash sale of Mrs. Clark's property having been called off, and E. D. Quick, her husband, being therefore unable to pay McGown for the property which he had purchased, Quick and McGown made a trip to Jackson parish, Louisiana, to see what disposition could be made of Mrs. Clark's land. It was found that M. E. Norred was willing to purchase the land on terms of credit. The price and terms, which were arranged by E. D. Quick, were as follows: $367.50; $50.00 cash and the balance in two notes due in one and two years. In order to make the sale to Norred Mrs. Clark, of course, had to sign the deed. E. D. Quick and McGown returned to the state of Texas where Quick had an attorney by the name of Minton to prepare the deed on the terms above named. The attorney prepared the deed and delivered it to Quick, who left the office of the attorney, stating that he would have the deed signed.

The attorney, Minton, says that subsequently either Mr. Quick alone or Mr. Quick and his wife returned to his office exhibiting the deed purporting to be signed by both Mr. and Mrs. Quick, and

acknowledged before a notary. Minton, the attorney, made a draft on Norred for the sum of $50.00 and prepared two notes to represent the deferred payments and sent the draft, the two notes and the deed to the Jonesboro State Bank to be accepted by Norred. Norred signed the notes, paid the draft and the notes and cash were returned to Minton by the bank who in turn delivered the cash and the notes to E. D. Quick.

The notes in question were made payable to E. D. Quick and not to his wife. Quick delivered the cash and the notes to McGown in part payment for the land which he had purchased in Texas. McGown held the notes until after maturity and presented them for payment. Norred was unable to pay them and on September 8, 1917, Norred, who claims to have held a deed from Mrs. Quick, sold the land to A. L. McGown, the consideration expressed in the deed being "the cancellation and delivery to the said Mack E. Norred of two certain vendor's lien notes against the above land signed by the said Mack E. Norred of date May 14, 1913, and payable to E. D. Quick and maturing November 1, 1913, and November 1, 1914, for the sum of $158.75 each".

In order to establish the verity of the purported deed from Mrs. Quick to Norred, defendants took the deposition, by commission, of Minton, the attorney in Texas, who represented E. D. Quick at the time and who wrote many letters about the sale for Quick. He says he saw a deed with the signatures of both Mr. and Mrs. Quick written thereon and purporting to have been acknowledged by them before a notary, but he does not know the name of the notary before whom it was acknowledged, nor the names of the witnesses attached thereto, and he was unable to state whether the deed or the acknowledgment bore the genuine signature of Mrs. Quick, as vendor.

From Minton's testimony as a whole, it appears that Mr. Quick conducted all the negotiations with reference to the sale. He got Minton to prepare the deed. Minton seems to recall the details of the transaction with remarkable accuracy, and, in addition, he retained copies of letters which were written by Quick and by him, which he produced and which were filed in evidence in connection with his testimony taken by commission.

His testimony shows that at one time he was a notary and did notarial work in connection with his law practice. Owing to his business relations with the Quicks it would seem natural that they would have signed and acknowledged the deed before him. He says, among other things, that he does not recall whether the deed was signed and acknowledged before him or some other notary. We are satisfied that it was not, for the reason that if it had been he would unquestionably have recalled that fact, because, as stated, he recalled all other details in connection with the transaction.

Mrs. Quick, now Mrs. Clark, swears positively that she did not sign or acknowledge such a deed; that she did not see it; and she swears, further, that she did not get the money and did not see the notes.

The testimony makes it clear that the notes were made payable to the husband, that he got them and the cash and turned them over to McGown in part payment for the land which he had purchased for himself in his own name. No one who claims to have seen the deed could say that he recognized Mrs. Clark's signature thereto.

Counsel for defendants contend that title to real estate may be shown by parol testimony upon proving the loss of the deed and the contents thereof, and in support of that contention they cite Davis Heirs vs. Davis Heirs, 123 La. 1091, 49 South. 718; Cain vs. Bauman, 118 La. 82, 42 South. 654; Grotevant vs. Dorrestein, 152 La. 734, 94 South. 372; and McNeely vs. Hyde, 46 La. Ann. 1092, 15 South. 167.

Conceding that as true, it is also true that the rule which admits proof of the contents of a private deed lost or destroyed does not dispense with the necessity of proving its execution. See:

Bradley vs. Calvit, 5 Mart. (N. S.) 662;

Cooper vs. White, 16 La. Ann. 317.

Defendants fail on the latter point. They have not proved the execution of the deed by Mrs. Quick, the alleged vendor.

The alleged deed from Mrs. Quick to Norred was a private act, was lost or destroyed, and was never recorded. Even if defendants had been in possession of the alleged deed, it would not have been admissible in evidence, because written instruments under private signature are not admissible in evidence until the signature thereto is proven.

Civil Code, Art. 2245.

Calhour vs. Pierson, 44 La. Ann. 584, 10 South. 880.

James vs. Rand, 43 La. Ann. 179, 8 South 623.

Code of Practice, Art. 325.

There is not a scintilla of evidence in the record to show that Mrs. Quick signed the deed which is relied on by defendants as the basis of their title to her undivided half interest in the land. On the contrary, she denies that she signed it or that she ever saw it or that she authorized its execution.

Defendants are, therefore, without ground to stand upon, so far as her interest in the land is concerned.

Defendants urge the point that a plaintiff in a petitory action must recover on the strength of his own title and not upon the weakness of the defendants. That is elementary. In this case, however, the land in dispute was purchased by Mrs. Clark's first husband, Glover, during the existence of the community between them. At his death she owned an undivided half interest therein. That fact is undisputed. As to a showing of title, she has met the requirements of the law.

## AS TO THE OTHER UNDIVIDED HALF INTEREST, INHERITED BY THE MINORS

On September 18, 1917, M. E. Norred sold to A. L. McGown an undivided half interest in the land which he claims to have purchased from Mrs. Clark. He executed a notarial deed which was duly recorded.

On January 21, 1918, McGown filed suit in the District Court of Jackson Parish, where the property is located, alleging that he was the owner in common with the minors named of the property now in dispute and that the property was not divisible in kind and that he was not willing to hold the land in common with them any longer. He prayed that it be sold in order to effect a partition.

Upon allegation and affidavit that the minors were absentees and had no tutor to represent them in the parish of Jackson in the proceeding, an attorney was ap-

pointed tutor ad hoc to represent them in the partition suit. The tutor ad hoc accepted the trust and took the usual oath. He filed answer in which he admitted the ownership of the property, as alleged, but denied plaintiff's allegation with reference to the indivisibility in kind of the property. On the trial of the case no proof of ownership seems to have been made. Apparently the court considered that the question of ownership was not an issue, it having been admitted by the tutor ad hoc. On the question as to whether the property could be divided in kind, one witness testified that it could not be so divided without a diminution of its value.

Upon the pleadings and the evidence the District Court rendered judgment reciting "and the law and the evidence being in favor thereof it is ordered, adjudged and decreed that there be judgment in favor of the plaintiff, A. L. McGown, and against the defendants (naming the minors) recognizing plaintiff and defendants to be the owners in indivision in the proportions of one-half to plaintiff and one-sixth each to defendants in the SE¼ of NW¼; SW¼ of NE¼; NE¼ of SW¼; and W½ of NW¼ of SE¼, Section 5, Township 15 North, Range 3 West, and decreeing a partition by licitation. It is further ordered, adjudged and decreed that said property is not divisible in kind and that same be sold by the sheriff of Jackson parish after due advertisement, at public auction, for cash, to the last and highest bidder".

The judgment further referred the parties to a notary to complete the partition.

The clerk of the District Court issued a writ addressed to the sheriff, commanding him to sell the property in accordance with the terms of the judgment. The property was sold by the sheriff at public auction, and according to the recitals of the deed all the formalities of the law were complied with. The property was purchased by S. B. Norred (not M. E. Norred, who previously sold a half interest to McGown); he, in turn, sold the property and through him portions of it went into the hands of the other defendants in this case.

It is contended by the three Glover heirs, all now of age, that Norred acquired no title to the land by virtue of said sheriff's sale and that they are the owners of the land, on the ground, first, that McGown, who provoked the partition sale, had no title to the half interest in the land and therefore no standing in court in the suit; and, second, that the judgment ordering the partition was rendered without proof of the ownership of the property, it being contended that the judgment finding that the land was owned in common by the plaintiff and defendants was based upon a tutor ad hoc's admission of ownership in the answer.

The property sought to be partitioned is situated in Jackson parish. The District Court there unquestionably had jurisdiction of the suit for partition, and it is not disputed that the defendants, the minors, residing in Texas, were properly represented by the tutor ad hoc who filed answer in his official capacity. The court passed upon and disposed of all the issues presented in the case. That judgment was rendered on February 8, 1918. No appeal was taken and the finality of that judgment is as complete as if it had been reviewed and affirmed by the court of last resort.

Mr. Justice Fenner, as the organ of the court, in the case of Hereman vs. Louisi-

ana Institute, 34 La. Ann. 814, on rehearing says:

."No principle of law is more inflexible than that which fixes the absolute conclusiveness of such a judgment upon the parties and their privies. Whether the reasons upon which it was based are sound or not, and even if no reasons at all were given, the judgment imports absolute verity, and the parties are forever estopped from disputing its correctness."

.And he quoted, with approval, the following from Bigelow on Estoppel:

"Matters once determined in a court of competent jurisdiction may never again be called in question by parties or privies, against objection, though the judgment may have been erroneous and liable to, and certain of, reversal in a higher court."

The case quoted from involved the validity of a sale of real estate made under judicial process, as does the one at bar.

To quote further from that case:

"Equally vain is it to contend that the court had no right to order the property to be seized and sold. This was the relief asked in the suit and adjudged by the court, and is equally concluded by the judgment. The proceedings in execution being expressly conformable to the express terms of the judgment cannot be questioned."          .

The court in the case at bar having had jurisdiction and the .minors having been properly represented, it necessarily follows that in the absence of fraud they are as fully bound as if they had been majors and personally cited. See:

La. State Bk. vs. Navigation Co., 3 La. Ann. 313.

Johnson vs. Weld, 8 La. Ann. 126.

Schaffer vs. Scuddy, 14 La. Ann. 575.

Succession of Begue, 112 La. 1046, 36 South. 849, (on rehearing).

Boudreaux vs. Lower Terrebonne Rfg. Co., 127 La. 98, 53 South. 456.

On the question of the right of purchasers at judicial sales, our Supreme Court, in the case of Succession of Theze, 44 La. Ann. 46, 10 South. 412, said:

"It has long been the settled jurisprudence of this court that a purchaser at a judicial sale is held bound to look to the jurisdiction of the court granting the order of sale; but the truth of the record concerning matters within its jurisdiction cannot be disputed."          .

Citing a long list of authorities.

And further:

"A purchaser at a judicial sale of property of the succession is not bound to look further back than the order of the court directing the sale."

Citing:

Webb vs. Keller, 39 La. Ann. 55, 1 South. 423.

Linman vs. Riggins, 40 La. Ann. 761, 5 South. 49.          .

Succession of Lehman, 41 La. Ann. 987, 7 South. 33.

Gale vs. O'Connor, 43 La. Ann. 413, 9 South. 557.

The property in controversy was sold by reason of an order of a court which had jurisdiction; the minors were properly represented in the suit; a writ of sale was issued commanding the sheriff to sell the property; the sheriff did sell the property after due advertisement at public auction to the highest bidder for cash which was paid by the purchaser.

Even if it be conceded that the court had insufficient evidence upon which to base its judgment, that question is foreclosed by the judgment long since final as to all the parties.

It is not suggested that the purchaser was guilty of any fraud or collusion.

Our conclusion, therefore is that the title as to the minors' interest in the land obtained by Norred at that sale is good and that he transferred a valid title to the other defendants in this suit.

It is urged by the Glover heirs that E. D. Quick, their guardian, living in Texas at the time, came to Louisiana, got the proceeds and failed to settle with them. Conceding that to be true, that does not affect the title. Quick, the guardian, was not a party to the suit under which the judicial sale was made, and the minors who were defendants in the suit were properly represented by a tutor ad hoc appointed by the court.

Quick was appointed guardian of the minors under the laws of Texas. After the sale he came to Louisiana and presented to the District Court of Jackson Parish where the land was situated a certified transcript of the proceedings in the Texas court by which he was appointed guardian, and asked that he be recognized, and there was judgment by the Fifth District Court of Jackson Parish rendered on June 14, 1918:

"Recognizing and confirming the appointment of E. D. Quick by the County Court, Sabine County, Texas, as guardian of the minors, Henry Glover, Homer Glover, and Walter Glover, and authorizing and empowering him to take possession of and remove from the state of Louisiana all of the property and effects, within the parish of Jackson, belonging to said minors, and particularly the sum of five hundred fifty-four 07-100 dollars now in the registry of this court and belonging to said minors, less the expense of this proceeding."

We find in the record a cancelled check drawn by E. L. Walker, clerk, made payable to E. D. Quick, guardian, dated June 14, 1918, for the above sum, specifying that it is for the interest of the minors in full, less costs.

E. D. Quick died in 1920, and the Glover heirs now say that he made no settlement with them. That fact cannot affect the validity of the judicial sale. Quick, the Texas guardian, gave bond in the sum of $500.00; their recourse was against the bondsmen.

Lastly, plaintiffs contend that the transcript of the proceedings in the County Court of Sabine County, Texas, appointing E. D. Quick guardian, were improperly certified and should not have been admitted in evidence in the District Court of Jackson Parish in the proceeding under which he was recognized as guardian and authorized to remove the funds.

A complete answer to that contention is that the judgment complained of was rendered on June 14, 1918, more than seven years previous to the filing of this suit, and is conclusive on the point raised.

See authorities on that point cited above.

The judicial sale transferred to the purchaser such title in the land as the parties to the suit had. Mrs. Clark never having parted with title, McGown, the plaintiff in the partition suit, had none to the one-half interest which he claimed and, therefore, the purchaser got none; but the minors owned an undivided half interest which passed to the purchaser by virtue of the sale.

For the reasons assigned, it is therefore ordered, adjudged and decreed that the judgment appealed from be and the same is hereby affirmed insofar as it concerns the plaintiff, Mrs. Nannie May Clark, widow Glover; and as to the plaintiffs, Henry J. Glover, Homer T. Glover and Walter L. Glover, the judgment is reversed, their demands rejected and the suit, as to them, dismissed, they to pay one-half of the costs of the suit, the other half to be paid by defendants; the costs of this appeal to be paid by appellees, Henry Glover, Homer T. Glover and Walter L. Glover.

ON APPLICATION FOR REHEARING

Per curiam:

The rehearings herein applied for by the plaintiffs, appellees, Henry J. Glover, Homer T. Glover and Walter L. Glover, and by the defendants, appellants, S. B. Norred, O. E. Hodge, John S. Hunt and A. E. Simonton, are refused