## No. 7799.

### IN THE MATTER OF THE ESTATE OF JOHN F. ALTEMUS.

Mere illegality in the appointment of an administrator or curator, will not vitiate the acts done under it. The acts of the officer in such case are valid, although he should have been illegally appointed.

The fact that the officer appointed to administer a vacant estate is styled an administrator, instead of curator, does not render void his acts. The duties of these two officers are substantially the same.

The legality of the appointment of an administrator cannot be questioned by way of opposition to his account.

The appointment of one who is at the same time an ordinary and a commercial partner of deceased, as administrator or curator is not absolutely void.

In the settlement of the accounts of the administrator or curator of a vacant estate, minor heirs who are absentees, are properly represented by the attorney of absent heirs, and a tutor *ad hoc* should not be appointed for them.

Courts of probate have no jurisdiction to settle the accounts of the liquidator of a partnership, but they have jurisdiction of the settlement of the accounts of an administrator, and where the administrator incidentally brings into his account the details of an extrajudicial settlement made of the interest of deceased in a partnership, the probate court has jurisdiction to ascertain and determine whether the administrator has accounted for all the effects of deceased, and therefore incidentally to inquire into the partnership settlement.

APPEAL from the Parish Court of Iberville.    *Cole*, J.

Samuel Matthews for administrator and appellant:

First—The legality of the appointment of a tutor, curator, or administrator, who has been duly appointed and has qualified, cannot be collaterally questioned.    30 An. 268.

Second—Where a partnership between two persons was not exclusively commercial, the surviving partner has a preference over every one else to administer the succession of the deceased partner.    C. C. 1122, 2825, 1121.

Third—The administration of a succession which has been closed cannot be re-opened and a new one provoked on the ground that the one who administered did it under the name of "administrator," instead of curator. C. C. 1049, 1139, 1140 ; 15 An. 250.

Fourth—Minors are properly represented by a tutor *ad hoc*, and not by an attorney of absent heirs, in proceedings to homologate an administrator's account. 12 L. 81.

Geo. Wailes and Barrow & Pope for defendants and appellees :

First—Until an heir be recognized, and *admitted* as such, he has no action to compel the curator to account or to deliver to him the property of the succession. Stein vs. Bowman, Curator, 9 La, 284 ; 11 La. 182.

In 4 R. p. 43, where the question was, as stated by the court, "whether the applicant, as universal legatee of James Lilly, can be allowed to proceed, *ex parte*, to cause himself to be recognized as such, and to take possession of the estate," the court said, answering the question in the negative. C. C. 1181, 1193, 1194, 1216 ; C. P. 1000-1-2-3-9.

Second—The succession of Altemus, being a vacant succession, cannot be represented by an *administrator*. An administrator is only appointed to a succession where the heirs being present, or absent, and represented, accept the succession with benefit of inventory. See C. C. 1043 to 1049. The administrator represents creditors. The curator of the vacant estate represents the estate, which under the civil law is a fictitious entity. 9 L. 142 ; C. C. 1097.

Third—An absentee must be represented by a curator *ad hoc*, not by an advocate. 13 An. 405.

Fourth—Roth was the commercial partner of Altemus. Art. 1122 (1115) is prohibitory.

The partner or partners of a commercial house having accounts to render to the heirs of their deceased partner, "can, in no case, be appointed curators to the vacant succession, or that of the absent heirs of the deceased." Hence his appointment was an absolute nullity. 6 An. 565 ; 1 An. 267 ; C. C. 12, 2895 ; 15 An. 343 ; 18 An. 24 ; 2 An. 492 ; 30 An. 806.

Fifth—On a dissolution by the death of a partner, the surviving partners cannot sue for debts due the partnership, unless they obtain authority from the proper tribunal or be joined by the representatives of the deceased ; nor can they sue as surviving partners for the use of all. 3 L. 358 ; 7 L. 196 ; 19 L. 402 ; 13 L. 484 ; 16 L. 31 ; 1 R. 54 ; 9 L. 150 ; 18 An. 260 ; C. C. 1131.

Sixth—It is faintly said the estate of Altemus is not a vacant estate !

Both petitions deny it. No heirs have yet been made known to the court. Certain persons have claimed to be heirs, and passed extra-judicial acts purporting to sell their interest, but they have not yet proved themselves such. Certainly, no heirs presented themselves within ten days. C. C. 1101 (1093). But why, if the succession is not vacant, was Geo. Wailes, attorney for absent heirs, appointed and cited?

That there is a greater distinction than that of a name, is shown by the following: A curator of a vacant succession or of absent heirs must give a bond for one fourth over and above the inventory, bad debts excepted. C. C. 1126 (1119), 1127 (1120), 1128 (1121). The commercial partner, claiming to administer, must give bond to the curator of the vacant estate.

The powers of a curator of a vacant estate and those of an administrator are not the same. An administrator, only representing the creditors, cannot maintain a suit for partition, but a curator to the vacant estate, or of absent heirs, can, and it is made his duty to institute such a suit, where the deceased holds property in common with others. C. C. 1135 (1128).

The curator of the vacant estate represents a different entity or person from an administrator, so that whether or not there was such a representative becomes of vital importance to the rights of persons in the settlement of successions.

Seventh—Until a curator of the vacant estate is appointed, the attorney for absent heirs is the only person having authority to represent the estate. C. C. 1213 (1207); C. P. 1009.

---

The opinion of the court was delivered by

SPENCER, J. John F. Altemus died in the fall of 1878, in Iberville, where he resided. He was a member of the commercial firm of Roth, McWilliams & Co. of that parish, and was also a partner with Roth and McWilliams in planting; so that Roth was at the *same time* a *commercial* and an *ordinary* partner of Altemus. The heirs of Altemus, it seems, resided out of the State, but were not unknown. They were his father, mother, seven brothers, a sister, and a niece.

In September, 1878, Roth made formal application for administration of said estate, reciting the above facts, and prayed to be appointed administrator, and that an attorney of absent heirs be appointed and an inventory made. After due notice and delay, he was appointed and duly qualified as administrator. George Wailes, attorney-at-law, was named attorney of absent heirs, and a full and elaborate inventory made of the assets of the commercial firm and its liabilities, and also of

the property owned by the ordinary partnership, in both of which Alte—mus owned an interest of one fourth.

On 26th June, 1879, Roth as administrator, rendered in the probate court his final account, representing that all the debts of the partnerships had been paid, that the major heirs of Altemus, representing 16-18ths of his estate, had sold their interest therein to petitioner and McWilliams, and that the remaining 2-18ths belonged to two minors, for whom he prayed a tutor *ad hoc* to be appointed. He presented in his account a statement of the personal debts of deceased and those of the administration, and prayed permission to pay them, and that upon doing so he be discharged and his account homologated. E. B. Talbot, attorney-at-law, was appointed tutor *ad hoc* for the absent minors. Talbot, as tutor *ad hoc*, opposed the allowance to Desobry, the notary, for making inventory, as excessive.

Desobry thereupon filed an exception to Talbot's capacity to stand in judgment, on various grounds. Geo. Wailes, attorney of absent heirs, having been cited, appeared, and for answer, and as cause why the account should not be homologated, shows :

First—That the succession of Altemus is a vacant succession, and that Roth was a commercial partner of deceased ; that the said succession can only be settled by a curator duly appointed ; that Roth has not been, and cannot legally be, appointed such curator, as the law forbids the appointment of a commercial partner ; and that his acts as administrator are therefore null and void.

Second—That in so far as said account purports to liquidate the affairs of the commercial firm of Roth, McWilliams & Co., the parish court is without jurisdiction.

The court sustained these exceptions, rejected the account, and dismissed the petition of Roth, administrator. It also sustained Desobry's exception, and dismissed the opposition of Talbot, tutor *ad hoc*. There are therefore presented for our consideration four questions, to wit :

First—Where the heirs of deceased are all absentees, is the appointment of an administrator, instead of a curator, absolutely null ?

Second—Where a person occupies toward the deceased the double relation of a commercial and an ordinary partner, is his appointment as administrator or curator, as the case may be, absolutely void ?

Third—Is the appointment of a tutor *ad hoc* for absentee minors, in matters relating to the accounts of successions, illegal ?

Fourth—Had the parish or probate court jurisdiction of the account rendered in this case ?

It seems to be conceded, and indeed we do not think it can be denied, that unless the appointments of administrator or curator, as the case may be, in cases put in our first and second inquiries, are abso-

lutely void, the acts done by them in such capacities are legal and bind-ing ; for it is now elementary that the mere illegality of the appointment will not vitiate the acts done under it.    This is so true that the law will not allow a suspensive appeal from a decree appointing such officers ; but declares that such decree shall have immediate effect, notwithstand-ing the appeal, and therefore regardless of the legality or illegality of the appointment.    See C. P. 1059 : also, Succession of Dugart, 30 An. 268.

We are not prepared to admit that mere absence of the heirs makes an estate a vacant one.    C. C. art. 1095 defines a vacant succession as one "when no one claims it, or when all the heirs are unknown, or when all the known heirs to it have renounced it."    Now the heirs may all reside out of the State, and yet none of these conditions exist.    But if we concede the vacancy of the succession, we do not think that the appointment of an officer to administer it would be rendered void by the fact that he is called administrator instead of curator.    Art. 1097 C. C. says that "vacant successions are managed by *administrators* ap-pointed by courts, *under the name* of curators."    Substantially there is no difference between the functions of an administrator and curator. Their duties are the same.    C. C. 1049.    True, the courts have some-times said that "vacant estates" are fictitious beings, representing the deceased, its owners, until acceptance or renunciation by the heirs.    May not the same be said of a succession accepted with benefit of inventory, or where the heirs claim time to deliberate for acceptance or renuncia-tion ?    The estate is so distinct an entity in that case that the heir pre-serves all his rights against it, may sue it and otherwise treat it as a stranger to him.    And yet such an estate is represented by an adminis-trator *eo nomine*.    There is nothing of substance constituting a differ-ence between the duties and functions of an administrator of a succession, accepted, or pending its acceptance by the beneficiary heir, and those of a curator of a vacant succession.    It will be a sad day for the security of titles in Louisiana when its courts, on the strength of fancied differ-ences of duty between these officers, declare void their acts because done under one name rather than under the other.    It not unfrequently happens that it is difficult, if not impossible, to ascertain whether a man's heirs live within or without the State—in other words, upon oppo-nent's theory, whether the estate is vacant or not.    A curator is appointed, and it turns out that the heirs or some of them are present in the State. An administrator is appointed, and it happens that the heirs are absent. It is often the case, too, that there is doubt as to who is the heir, one present or an absentee.    Is it possible that in cases such as these the settle-ment of successions and the resulting titles are affected with radical nullities because the court made an error *in the name* of the adminis-

'trator appointed to administer? When the court decrees that there shall be appointed an administrator or a curator, as the case may be, and appoints him, that decree by the express terms of the law must have immediate effect, and all acts done under it are valid, and bind the estate, and the appointment is good until that decree is set aside by appeal or action of nullity. C. C.

We therefore answer our first inquiry in the negative.

Second—What we have already said goes far to answer the second question. Under the principle we have just announced, that decrees appointing officers to administer successions must have effect until annulled, and that the acts done by the person appointed are valid although their appointment be illegal, it is manifest that the acts of Roth cannot be treated as absolutely void. It is equally manifest that his appointment cannot be collaterally attacked. It must be questioned, if at all, not by way of opposition to his account, but by direct action. The law says that one who is debtor of the minor cannot be appointed tutor. It excludes him. C. C. The law also directs that the nearest male relative having the requisite qualifications shall be tutor in certain cases. C. C.

Would the appointment of this relative be absolutely void if it should turn out that he was, perhaps unknown to himself, at the time of his appointment debtor of his ward? What security would there be for the public if such doctrines were maintained? So, in the present case, Roth was, as an ordinary partner, called by preference to the administration, but as a commercial partner he was excluded. C. C.

The court by decree appointed him. That decree is valid, and must have effect until annulled in one of the ways provided by law.

Third—We think that the absent heirs, whether minors or majors, are in the settlement of the account of the administrator or curator properly represented by the attorney of absent heirs. C. P. 1009. The appointment therefore of a tutor *ad hoc* was improper and unnecessary. It is unnecessary to decide what would be the proper appointment for cases of partition and other actions against minors. The case before us is one of account, and article 1009 C. P. seems to provide for that case, and makes no distinction between absentees, whether minors or majors.

Fourth—It is very certain, and we have held, that courts of probate have no jurisdiction to settle the accounts between the deceased and the surviving partners of a commercial partnership. See Executors of Patterson vs. Mendelsohn & Newman, 31 An. 152. But we do not understand that this is a proceeding to settle the accounts of the liquidator of a partnership. It is an account of the administration of the individual estate of Jno. F. Altemus. The administrator has assumed

24

and undertaken to settle extra-judicially the affairs of the partnership, and in his accounts as administrator he incidentally sets forth the manner in which it has been settled, and the mode by which the interest of the deceased therein has been ascertained. There has been no legal administration of the partnership affairs. The administrator does not seek the authority of the court in that regard. He says the partnership consisted of such assets and owed such debts, which *have all been paid;* that there remain certain partnership effects, of which deceased owned one fourth, with which he charges himself, as part of the individual estate of Altemus. We do not understand the law as making a special and separate liquidation of the commercial partnership indispensable. It is a privilege which the surviving partner may claim, but is not obliged to exercise. If he do not see fit to claim the privilege, the administrator of the estate of the deceased partner must of necessity take charge and control of the decedent's interest therein ; this would necessitate the administrator charging himself, in account, with the share of the deceased in the assets, and crediting himself with the debts paid, etc.

Of course, prudence would require him to effect this settlement and separation of the deceased's interest therein through the courts of ordinary jurisdiction. But if he chose to do so extra-judicially, he must be prepared to show affirmatively that what he has done is legal, and that the estate has suffered no loss thereby. The probate court certainly has jurisdiction to ascertain and determine whether the administrator has accounted for all the property of the estate, and has legally disbursed its funds. In the instant case Altemus owned one fourth undivided in certain effects. The court can compel the administrator to show what disposition he has made of them, and condemn him to pay therefor if he has acted improperly therein.

We think the court has jurisdiction. In conclusion, we are unable to see the relevancy at present of the question as to who are the heirs of Altemus. It will be time enough to raise that question when the administrator has settled his account, and the estate is to be turned over to, or partitioned among, the heirs. If the parties who sold to Roth & McWilliams are not heirs, their purchase amounts to nothing, and cannot prevent the real heirs from taking the estate.

It is therefore ordered and decreed that so much of the judgment appealed from as dismisses the opposition of Talbot, tutor *ad hoc,* is affirmed. That in all other respects the judgment is annulled and reversed ; and it is ordered that this cause be remanded and re-instated on the docket, and that the court *a qua* proceed to hear and determine the matter of the final account of the estate of Altemus, presented by Roth, administrator ; that the costs of appeal be paid by the succession.