Statement of the Case.
NIOHOLLS, J.
This is a suit for damages for personal injuries alleged to have been received through the fault of the defendant; the plaintiff claiming judgment for $36,000. Plaintiff alleged that on or about the 17th of January, 1907, petitioner purchased a ticket from defendant’s station agent at Huttig, Union county, Ark., entitling petitioner to a first-class passage from said town of Huttig to the city of Monroe, La.; that petitioner paid a valuable consideration for said ticket; that petitioner boarded the passenger train of said railroad, and that the conductor of said company on said train called for and took up said ticket; that petitioner was quietly and properly seated in the passenger coach on said railroad; that when said train arrived at a point near Dean, a station on said railroad in the parish of Union, and wholly without fault ou petitioner’s part, but solely through the gross fault, recklessness, wanton negligence, and improper management of the said railroad company, its officers, agents, and employés, the train upon which petitioner was seated as aforesaid was negligently and wantonly permitted to collide in a “head-end collision” with another engine and train on defendant’s said railroad; that said trains were being negligently, recklessly, and wantonly run without headlights; that the said trains ran into each other with great force and violence, and partially destroyed both engines attached to said trains; that petitioner, seated in said coach as aforesaid at the time of the collision, was violently thrown forward, and was then by the rebound thrown violently backward against the seat from which he had been thrown, and thereby received serious, severe, painful, and permanent injuries to his spinal column between the first lumbar and the first sacral vertebrae, due to some crushing or fracture of the spines and laminae of said vertebra, in coming in contact, with the seat as aforesaid; that petitioner, as a result of said injury, had suffered great physical and mental pain, and is now suffering a partial motor and sensory paralysis of the lower limbs, and also a partial paralysis of the vesical and reflex centers; that petitioner has been informed and be *234 lieves, and, so believing, avers, that he will be crippled for life on account of said injuries, which were received without fault on petitioner’s part, and wholly through the recklessness, gross fault, and negligence of defendant, its officers, agents, and employes. He further prayed that he be allowed a jury to try this cause, and for all necessary orders, decrees, costs, and general relief.
Defendant answered, pleading the general issue.
The case was tried before a jury, which returned a verdict, by a vote of nine to three, of $5,000, with legal interest from judicial demand, and judgment was rendered accordingly.
After an .unsuccessful motion to obtain a new trial, defendant appealed.
Defendant raises no issue as to its liability for damages to passengers who might have been injured by the “head-on” collision of two of its trains, which gave rise to the litigation. The case is defended upon the grounds (1) that plaintiff suffered no injury whatever in the wreck, not the slightest; (2) that he is feigning the injuries of which he complains.
On the trial defendant resisted constantly the introduction of evidence to establish the existence of an injury in the slightest degree varying from that specifically described in plaintiff’s petition, and of consequences in any manner differing from those therein set out in the language of medical science. The case went to the jury under evidence which placed very fully before it the pretensions and claims of both parties.
The life and occupations and acts of the plaintiff prior to, at the time of, and after the alleged injury were disclosed, as well as the circumstances connected with the collision.
Every fact calculated to show that plaintiff did not receive injury from the collision, and which would tend to establish that he was feigning, as asserted by defendant — every fact which could create doubt as to whether his version of the facts of the case or the extent of the injury (which he claims to have received) if to be believed — was placed before the jury. If it reached wrong conclusions in the premises, the error did not proceed from want of information, direct and collateral, conveyed to them upon the subject they were called on to deal with.
After the jury had returned a verdict, defendant moved for a new trial, complaining on a number of grounds, among others, thirdly, that after argument of counsel and charge of the court the jury retired to consider their verdict, and after being out for some time returned into court and asked for additional and further instructions, and asked the court if they were limited and confined to the injuries set out in plaintiff’s petition, and asked, in the event they thought that the plaintiff had received slight injuries, but not permanent ones, were they authorized to find for such slight injuries, whereupon the court charged the jury that if they found that the plaintiff had suffered slight injuries, and such injuries, though slight, came under the injuries alleged in the plaintiff’s petition, they were authorized to find for such injuries.
Defendant averred that this charge of the judge was error, and misled the jury to the detriment of the defendant.
Fourth. That the damages awarded by the jury were evidently for what they considered slight injuries to have been received by plaintiff, and the same were excessive.
Fifth. That the verdict of the jury covered all the items of damages claimed in plaintiff’s petition, and that the evidence in the case did not warrant or support any verdict at all for vindictive or punitory damages.
Sixth. That the jury allowed interest upon the $5,000 awarded the plaintiff; that this was illegal, and outside of and beyond *236 the prayer for relief of the plaintiff’s petition.
The district judge, in overruling the motion, said:
“The special charge complained of in the motion was a proper charge. The jury had been fully instructed in the general charge as to the law applicable to this case, and it was reasonable to suppose that they considered this special charge in connection with the other instructions from the court. Besides, the defendant made no objection at the time, nor did it request any different instruction.
“Second. The court does not believe that any vindictive or punitory damages are included in the verdict. In the general charge to the jury the court had instructed them that ‘in a case of this kind punitory damages cannot be allowed, unless it be shown that the injury was the result of malice or evil instinct.’
“Third. Interest was demanded in plaintiff’s petition, and this was sufficient warrant to the jury to allow interest on the damages awarded.
“Fourth. There is a great deal in this case to induce the belief that plaintiff was feigning injury ; but this matter went, with other evidence, to the jury, and they believed otherwise, or at least a majority of them did.
“Fifth. The damages allowed by the jury are in the-opinion of the court excessive, but on this account a new trial will not be ordered. The upper court can correct the verdict in this respect, if it holds a like opinion. The trial of this case was long, tedious, and expensive to the litigants, and a new trial would multiply the cost, without any assurance that a different verdict would be obtained. No matter how many trials might be granted, the case would doubtless go to the Supreme Court for settlement. The parties seem to have placed the whole of their evidence before the court, and the case might as well pass on now for final adjudication.”
On the trial of the case, Dr. Thomas Regan, an expert surgeon, was appointed by the court to examine the plaintiff and report to it instanter the physical condition which he found to exist. Defendant’s counsel propounded to the witness the following question:
“My question is: In a case of the character of this, plaintiff is [in] a railroad accident, and the impact comes on. I-Ie is suddenly thrown forward, and then, falling back, his lumbar regions strike the iron arm of the bench he was on. He was a man in fairly good health theretofore [under] his statement of the case. A moment ago you say you would have to know the history of the cause of the suffering from a traumatic neurasthenia before you could say whether the man was like suffering from a traumatism. What I wish to ascertain is this: With this history before your patient having-been exhibited to you, is it not probable that this plaintiff is suffering from a traumatic neurasthenia ?”
To this question defendant’s counsel urged the following objections:
“The question is irrelevant and inadmissible under the pleadings, there being no allegation in plaintiff’s petition or issue in this case under which defendant is stated to be held liable for any neurasthenia, chronic or otherwise, and there is no issue raised in this case by the pleadings for which damages are claimed, or injury complained of resulting in neurasthenia. Defendant insists that the evidence is confined to the specific complaint included in plaintiff’s petition and denied in the defendant’s answer.”
The objection of counsel was overruled by the court, and the -testimony admitted. To this ruling defendant excepted, and tendered a bill of exceptions. The reason assigned by the court for its ruling was because it was claimed by the plaintiff that neurasthenia was a result or symptom of the injury alleged.
. The same objection which was urged to this question was made to apply generally to all testimony subsequently introduced which should fall under the objection, if well taken.
On the trial of the case plaintiff testified that at the time of the collision he was sitting at the end of a seat of the car (that is to say, the end next to the aisle); that when the two trains collided he was thrown violently forward upon the seat in front, and, rebounding, fell upon the iron arm of the seat from which he had been thrown. From this blow he received the injury for which he claimed damages. In his version of the occurrences at that time, plaintiff testified that he did not at once think or believe he was hurt; that he thereafter arose from his seat, stepped down to the ground without assistance, walked alone to the place where the two engines were locked, remained standing there for a considerable time, returned unaided, walked up the car step into the coach, remained sitting in the coach until it reached Monroe at 12 o’clock that night (near seven *238 hours after the collision), stepped out of the coach at Monroe to a street car, got down and walked several blocks to show several passengers who had been with him on the train where they could get lodging, and walked back to the end of a traffic bridge across the Ouachita river connecting Monroe with West Monroe, a town opposite Monroe on the Ouachita river, stopping at one saloon to get a drink of beer and at another for a cup of coffee. He further testified that he commenced feeling some pain about five minutes after the collision, but that he did not think it was serious until after he reached Monroe; that as he was walking in Monroe the pain increased, and when he reached the traffic bridge, in order to pass over to his house, which was just across the bridge, it became so intense that he was forced to lean against a wall or fence and call to the policeman to come to his assistance, which he did; that his leg, to use his expression, had then “gone down,” and he was unable to walk further; that he had to send out for a cab to take him to his home; that he had to be lifted into the cab, and to be lifted from the cab into his room; that Dr. Outlett was at once telephoned to, to come to his assistance, but he was out, and only came the next morning; that when he reached home he was in great pain and could not turn over in bed; that he was unable to leave his bed for several weeks, and was about his house and in his yard for some time more; that the blow which he received at the time of the collision had brought about as its consequence the result to himself which he had set out in his petition.
Defendant contended on the trial, and sought to prove by evidence, and contends now, that, had plaintiff been injured as he alleged he was, he would have been immediately paralyzed; that it would have been impossible for him to have moved about in the manner and to the extent that he had testified to; that, had he been injured in the manner, form, and extent he claimed to have been, the results would necessarily have been other and greater than those which were asserted to have followed; that, had he been injured as alleged, he could not possibly be in the condition he was at the time of the trial; that he could not possibly have left his bed and his house as quickly as he did. It introduced evidence to show by plaintiff’s subsequent conduct that he was feigning injury throughout; that very shortly after the accident he went unaided to Earmerville by train to consult a lawyer; that he carried crutches merely to convey the impression that he was unable to walk without the aid of them; that when he felt satisfied no one was observing him he would discard the use of the crutches and walk as well as any one, resuming them when he supposed he would attract attention; that he walked up a pair of stairs without any trouble; that he walked repeatedly from his home to Monroe, crossing the traffic bridge; that while there he kept late hours, playing cards and gambling at saloons. Defendant claimed, and still claims, that if the plaintiff is under physical disability of any kind, it results from sciatica or lumbago, which has no connection with the blow which plaintiff claims to have received by the collision of the trains. It further contends that the force of the collision was utterly insufficient to have produced the serious consequences contended for.
We cannot undertake to pass (from a scientific point of view) upon the differences of opinion between the different physicians touching plaintiff’s injuries. There were unquestionably great differences between them; each backing up his own views by reasons which we are satisfied the jury could not well follow and understand, and which the court itself would be at a loss to discuss.
We can only say that the position taken by the plaintiff found support in the conclusions of physicians to an extent sufficient to *240 satisfy the jury that plaintiff had in fact suffered injury from a blow received by him, caused by the collision of defendant’s trains. That body was the one charged by law with the duty of hearing evidence and passing upon the issues raised between parties. Our province is to feet aside its decision when we find that the jury was clearly in error. That we cannot do so in this ease. Prom the mere fact that the injury to plaintiff did not manifest itself at once, we cannot conclude that plaintiff was not in fact injured. The interval between the blow and its results was not so long as to throw doubts upon plaintiff’s veracity in respect to it.
A witness of the name of Gogne, who was on the train with plaintiff, going from the place of the collision to Monroe, testified that plaintiff complained to him on the train of being hurt, and that he himself assisted him by taking his arm while walking in Monroe. It is not to be supposed that plaintiff (if feigning) would have acted as he did at the time of the collision and immediately thereafter, and committed acts which were almost certain to be seized upon and held up by the defendant company by way of defense. Plaintiff named in his testimony the different persons who assisted him ■ to reach his home on the night of the collision, and recited the part which each took in so doing. Though at hand, they were not called upon to contradict him.
Dr. Cutlett, who attended the plaintiff the morning after the collision, testified to having found at that time a bruise near the small of his back. That fact, coupled with the situation in which he found his patient at that time, could fairly be considered by the jury to have borne to each other the relation of cause and effect. In Lowenthal v. Vicksburg, S. & P. R. R., 117 La. 1010, 42 South. 483, the facts connected with the injury which plaintiff claimed to have received and her conduct afterwards resemble closely the facts of this; yet the court affirmed the verdict of a jury rendered in her favor for $5,000. The plaintiff in that case did not know at the time that she was hurt, nor for some time after.
Defendant contends that the force of the collision was not such as to have brought about such serious results as those which plaintiff claims to have received; but it was sufficient to break the cowcatcher in front of each train, and it is shown by Dumas, who was seated in the same seat with plaintiff, and who, under the evidence in the record, does not appear to have been a very partial witness in his behalf, that he himself was thrown forward by the shock of the collision upon the seat in front of him, striking his breast, which was sore for a week after-wards, and that plaintiff was also thrown forward on that seat, though he adds that thereafter he “sat down nicely.”
There was a conflict of evidence as to whether the plaintiff was seated next the window of the car, or next the aisle. Dumas and his brother testified that he sat next the window. The purpose of the testimony introduced by defendant on that subject was to throw a doubt as to plaintiff having been thrown back on the iron arm of the seat, and to lessen the probability that his rebound upon the seat itself should have caused the injury. The jury thought proper to believe the testimony of the plaintiff on that point.
Defendant alludes to the fact that plaintiff was, to a very considerable extent, a gambler by occupation. That fact was established by the testimony. That circumstance, however, does not bar his right of recovery for damages for injuries received by him, if legally demandable. It did not render him incompetent as a witness, and, if his credibility was thereby affected, that fact was very plainly shown to the jury, and it none the less believed him.
In framing plaintiff’s petition his counsel, *242 instead of using words descriptive of the injury he received which were in ordinary use, understood, and familiar to every one, and also doing so in respect to the results of the same, added to the words of description technical medical terms as to the part of the body hurt and as to the consequences which resulted from the injury. The pleading evidently followed a diagnosis of the case which had been made by a physician. In so doing counsel opened the door to a contention on the part of the defendant that the allegata and the probata must correspond, and that any variation from the injury as precisely declared and from the consequences as specifically mentioned was inadmissible. The questions propounded by him were propounded from that standpoint and on that theory. The gist of plaintiff’s action was that he received serious injury to his back in the neighborhood of the spine from the cause stated in his petition, that the injury had carried with it as a result the partial loss of the use of one of his legs, that that result was permanent, and that he was entitled to recover commensurate damages.
Those were issues which were plainly understood by any jury, and which were susceptible of proof or disproof by the conclusions of physicians. We do not think that, in matters of claims for damages for personal injuries received, the counsel who drafts the petition and the client on whose behalf it is drawn should be tied down to absolute accuracy in the statement of the injury or its results. The words on that subject in this case were mere words of description, super-added to the cause of complaint, and which were subject to be affected more or less by the evidence taken on the trial. Plaintiff’s right to recover damages was not dependent upon his being able to prove the exact part of his spine that was injured or the exact nerve which was affected by the collision. We think the evidence which was introduced by the plaintiff fell fairly within the allegations of his petition. We do not think that the special charge of the judge to the jury, which defendant complains of, and his ruling upon the question of the admissibility of evidence covered by the bill of exceptions reserved by defendant, furnish ground for reversal.
Defendant maintains that the judge’s ruling on its application for a new trial evidences the fact that he did not concur in the conclusions of the jury on the main issue in the case. On the contrary, we construe it to mean that the matter at issue was one of fact, that it had been passed upon by the jury, and there was nothing in its conclusions which called upon him to interfere. On the question of the quantum of damages the judge did not concur. He was of the opinion that the amount awarded to the plaintiff was excessive, and this court is also of that opinion. We think it abundantly appears from the evidence in the record that the injuries which plaintiff has received are not permanent; that, though there be necessarily uncertainty as to the duration of those injuries, there was every likelihood of his entire recovery in six months after the trial.
For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, amended, so as to reduce the amount of the said judgment from $5,000 to $500, and, as so amended, that the same be, and it is hereby, affirmed. Appellee to pay the costs, of appeal.
PROVOSTY, J., dissents,