(57 South. 796.)

No. 18,794.

COPLAND v. CAREY et al.

(Feb. 12, 1912.)

*(Syllabus by the Court.)*

1. CANCELLATION OF INSTRUMENTS (§ 60*)— JUDGMENT—POSSESSION OF DEFENDANT.

As Miss Desimone, one of the defendants, has already sold the property which is the subject of this suit and has no control over it, it very naturally follows that a judgment ordering her to transfer the property to the plaintiff would be of no avail, as it could not be executed by her.

[Ed. Note.—For other cases, see Cancellation of Instruments, Dec. Dig. § 60.*]

2. VENDOR AND PURCHASER (§ 239*)—BONA FIDE PURCHASERS—RIGHTS OF BONA FIDE PURCHASER.

Where one purchases on the faith of the public records, which show that the vendor has a clear title to the property sought to be sold, the vendee gets a title good as against the world.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 583–600; Dec. Dig. § 239.*]

Appeal from the Civil District Court, Parish of Orleans; Walter B. Sommerville, Judge.

Action by Peter Copland against Santiago Joseph Carey and another. From a judgment for plaintiff, defendants and John C. Dodt appeal. Reversed, and petition dismissed.

Anthony J. Rossi, for appellant S. J. Carey. Chas. I. Denechaud, for appellant Miss Nellie Desimone. B. R. Forman, for appellant John C. Dodt. T. B. Walker, A. A. Sunseri, and Benjamin Y. Wolf, for appellee.

BREAUX, C. J. This was an action by plaintiff against defendants to annul an act of sale made by Mrs. Santiago Joseph Carey to Nellie Desimone, dated March 7, 1910, of a lot of ground, with improvements, designated by the municipal Nos. 426 and 430 North Rampart street, and to compel Carey to deliver this property to petitioner, or, in the alternative, that defendants be taxed in damages. Plaintiff claims to have bought this property from Carey on March 5, 1910, for the price of $6,000, and alleges, substantially, that, although he bought the property, the vendee never asked him to deposit 10 per cent. at the signing of the agreement of sale as earnest money, a deposit of an amount he was always willing to make, had it been requested. The offer to buy the property made by plaintiff, and the consent to sell, are in evidence, as also the written consent to deposit with Blakely & Chapron 10 per cent. of the amount offered to bind the sale.

Late in the afternoon of the same day the attorneys of Carey notified plaintiff that, if he did not comply with his agreement and buy the property and deposit $600 to bind the sale, and pay the cash price as agreed, suit would be instituted against him. Plaintiff avers that he did comply with this demand, and that, on the Monday following the Sunday after the sale that he could not comply on Sunday early in the day, he called upon Blakely & Chapron, who were the agents of Carey, and deposited $600 on account of his purchase of the property sold to him at private sale on March 5, 1910, and thereafter he was really willing to pay the price; that he thereby finally completed the act of sale of the property from Carey to him; but that, none the less, Carey disregarded his agreement by selling the property on the same day to Miss Nellie Desimone, codefendant, for $5,000 in cash.

Richard Pearce intervened and became a party to this act, and relinquished all rights he had under an agreement of sale by Santiago Joseph Carey to him. Pearce, also, after the defendant had abandoned the idea of selling, became a prospective vendee.

Defendant Carey admitted that he signed an agreement to sell the property, but denied that plaintiff had complied with the agreement. The agreement was that the usual deposit of 10 per cent. would be made immediately. In the office of the notary, Mr. Upton, it was stated by the purchaser to Blakely & Chapron that, instead of depositing the 10 per cent. with them in accordance with the agreement, it would be deposited with his own notary, Upton. This excited the sensitiveness of the real estate agents, and it resulted in the employment by them of an attorney to compel the purchaser to comply with the agreement, and deposit the amount with them. On the trial, plaintiff sought to prove that the real estate agents had consented to a delay. That contention is not fully proven; besides, it is abundantly shown that the vendor never consented to depart from the written agreement.

Miss Desimone averred in her answer that she purchased the property in good faith on the 7th day of March, 1910, and stood upon her rights as an alleged purchaser.

The district court rendered judgment for plaintiff Copland and against defendants Carey and Miss Desimone, condemning them to deliver the property to plaintiff as owner, the plaintiff to pay the sum of $5,400. From this judgment condemning these last-named persons to make title to plaintiff, Carey and Miss Desimone appealed, and thereafter John C. Dodt, as a third person with interest, also appealed.

It will not take much time to dispose of the case in so far as Miss Desimone is concerned, for she admitted as a witness that the property was bought in her name for the sake of convenience; and this statement is confirmed by a written letter declaring that John C. Dodt furnished the purchase price, and that she would, whenever required, make conveyance of it to him.

The exception of no cause of action:

[1] There are two propositions interposed by the defense presenting the important issues for decision; that is, in the first place that there never was a contract of sale contemplated between plaintiff and defendant Carey; and, in the second place, if there was a contemplated sale between them, then that plaintiff could still not recover the property because it had been transferred, and was in the possession of a third person as owner for a good and valid consideration. The deed under which Dodt owns has been timely recorded, and the price paid by him.

Taking up the first proposition for discussion, the proposal to sell was clear and direct; and should have been accepted, and performance by depositing the required

amount should have immediately followed. Instead, there was delay on the part of the would-be purchaser.

In the present suit the last purchaser, Dodt, was not made a party. After the evidence had been heard and proceedings had been had, this purchaser intervened. We have noted that no action was taken upon this intervention. The intervener intervened only for the appeal, but it is very evident that he cannot be ignored in matter of the title.

The district court held that the property must be delivered by Miss Desimone, the alter ego of the original owner, Carey. If this judgment were affirmed, she would be placed in a dilemma. The judgment would be ineffective, for she would be powerless to deliver the property. While it is true that she might be obliged to deliver property in her possession, she cannot be made to deliver possession of property of another, Dodt, who is in his possession under title. Whether the title is good or bad, it is the latter's title, which he can insist upon holding until legally divested.

The judgment goes no further than to order the defendant to deliver the property. The question of damages asked in event of failure to deliver the property was passed by the court a qua without notice. The appellee has not asked in this court for an amendment of the judgment, but only for an affirmance of the judgment. It results that the damages are entirely eliminated from the case on appeal. The defendant Carey would be exceedingly fortunate if the judgment were affirmed as rendered. He would only have to stand by and see the property delivered while he would have the price paid by each of the purchasers. · He would receive two prices. That would be for him, a fortunate termination of a litigation, if it were possible under the law.

[2] We sum up the facts as follows:

D. (Dodt) bought land of C. (Carey). C. had previously sold to C. (Copland). The latter was slow in making required deposit of 10 per cent. of the price in accordance with agreement. D. evidently knew that there had been some negotiations with C. about this land. But the negotiations, on account of C.'s delay to perform his part in the proposed transaction, were brought to a close. C. said to D. that he had abandoned all idea of selling to C., in the language of business, that the negotiations were "off," as stated ·by C., and that he had thus declared to C. as the latter had not deposited the 10 per cent. of the price in accordance with agreement. It was afterward that he sold to D.

Evidently D. was not over confident. On his request, another, D. (Miss Desimone), signed the deed for him as purchaser from whom he required a counter letter. It was a mere nominal sale. C., ·the owner, who had offered to sell to C., was for reason not explained anxious to sell. He was hasty and even precipitate in his dealings. It was his property none the less, and he had a right to be hasty if he chose.

C., wishing to hastily dispose of his property, negotiated with another real estate broker, P. (Pearce), to such an extent that the latter's name appeared in the position of one who had acquired a right in the property from P. He, Pearce, renounced that right. It does not appear to us that in thus renouncing the main features of the transaction between D. and C. were changed. There is no fraud in this act which can affect the right of D., who was not at fault in buying on the face of the record, which was clear of adverse claims, and on the assurance of all concerned, except C., that there was no pending deal between C. and D.

We might stop here, without going a step further and considering the merits. We

might sustain the defendant's exception of no cause of action, but we pursued the subject further, and decided the case on the merits. We might stop here. Having considered the other issues presented, further conclusions were arrived at, disposing entirely of the disputed points, which we will now state.

There never was a contemplated sale, and plaintiff did not exert himself to acquire the property as he might and should have done. One is at liberty to offer his property for sale on his own terms and conditions. If they are accepted, whatever devolves upon the purchaser should be done. It does not appear with any degree of certainty that the promise was executed. Furthermore, the purchaser accepted the situation, and was not at fault in accepting a sale when nothing proved that another had title, for the good reason that there was no title.

For reasons stated, the judgment appealed from is annulled, avoided, and reversed, plaintiff's demand is rejected, and his petition dismissed, at his costs in both courts.