No. 3165

Second Circuit

CRAIG'S HEIRS v. FROST LUMBER INDUSTRIES, INC.

(March 12, 1929. Opinion and Decree.)
(April 5, 1929. · Rehearing Refused.)

Rusca and Cunningham, of Natchitoches, attorneys for plaintiff, appellant.

Phanor Breazeale, of Natchitoches, attorney for defendant, appellee.

ODOM, J. The plaintiffs, alleging themselves to be heirs of their deceased father and mother, Crawford and Emeline Craig, bring this suit against defendant to recover the sum of $1,000, the alleged value of timber which was cut and removed from the E½ of the NE¼ of Section 32, Township 12, Range 6, by the defendant. They allege that their deceased father and mother owned said land at the time of their death and that, as heirs, they have never been legally divested thereof. They further allege that defendant trespassed upon their property and cut and removed the timber therefrom under a purported deed from A. W. Hanson, but that said Hanson had never in fact owned the said property, he having acquired the same from James McCoy who had styled himself administrator of the · succession of their

deceased parents; and they further allege that in a suit styled "Heirs of Craig vs. J. M. McCoy et al." on the docket of said Court, the succession proceedings under which the said property had been sold by McCoy, styling himself administrator, had been declared null, void and of no effect and that the sales made by him to one Gordon and by Gordon to the said Hanson were also null, void and of no effect.

The defendant, in answer, admitted that it had cut and removed from said land the merchantable timber, but that it did so as owner, it having acquired said timber in absolute good faith from one Albert W. Hanson by notarial act, duly recorded in the notarial records of the Parish, and that it had paid full value therefor; and further, that it had bought said property on the faith of the public records of the Parish.

There was judgment in the lower court in favor of defendant, rejecting plaintiffs' demands, and they have appealed.

## OPINION

The succession of Crawford Craig and his wife, Emeline Craig, was opened in the Parish of Natchitoches in the year 1917. The succession proceedings are in the record, and from them we find that on March 11, 1917, James McCoy presented to the Judge of the District Court of Natchitoches Parish a petition alleging that Crawford Craig and his wife had died intestate therein, leaving property, both real and personal, and that the succession owed debts, both privileged and ordinary; the he was a creditor thereof, and he asked that he be appointed administrator of said succession, and that letters testamentary issue to him. On March 14th, the District Judge ordered that notice of

said application be published, according to law, appointed M. L. Dismukes, attorney, to represent the absent heirs; ordered an inventory made by J. O. Gunter, notary public; and designated Richard Graham and J. L. Crocker appraisers. On March 23rd, the inventory was made by the Notary Public and the property was appraised at $400, which inventory was returned and filed in court on March 28th. On that date, a deputy clerk of the District Court certified that notice of the application of McCoy to be appointed administrator of the said succession had been published in the Natchitoches Times; that the delays for opposing said application had expired, and that no opposition had been made thereto.

On the same day, March 28th, the District Judge, after reciting that notice of said application had been published according to law and that no opposition had been made thereto, and the legal delays having elapsed, ordered "that J. M. McCoy be appointed administrator of this succession, and that letters, as such, issue on his complying with the requisites of the law." On the same date, the administrator filed bond with surety in the sum of $600, whereupon a deputy clerk issued letters of administration to McCoy reciting after preliminaries, as follows:

"NOW, KNOW YE, That the said J. M. McCoy has been, and he is hereby appointed administrator to the said succession, and that he has fulfilled all the requirements of the law."

Nothing further seems to have been done until December 15, 1917, when said McCoy, administrator, presented a petition to the Court alleging that funds were necessary with which to pay debts of the succession, and asked for an order authorizing him to sell according to law the property of said succession, especially

describing the real estate hereinabove described; and on December 29th, the Judge of the District Court signed an order in words and figures as follows, to-wit:

"Let the real estate belonging to this succession be sold, as prayed for, by James M. McCoy, Administrator, in the City and Parish of Natchitoches, on the terms and conditions mentioned in the foregoing petition, after legal delays and advertisements, and according to law."

Said property was duly advertised in a newspaper to be sold a public auction at the courthouse, in the City of Natchitoches, on Saturday, February 9, 1918, as per newspaper clipping which we find in the record.

On that day, the Administrator, in person, as auctioneer, sold said property to one Samuel R. Gordon, the proces-verbal of the sale reciting that it was sold to the last and highest bidder for the sum of $405, which was paid in cash by the purchaser. Following this sale by the Administrator to Gordon, he sold said property by notarial act on February 21, 1918, to Alfred W. Hanson, the deed being duly recorded in the notarial records of the Parish of Natchitoches, and, on June 15, 1925, said Hanson, by James M. McCoy, agent and attorney in fact, whose power of attorney was of record, sold the merchantable timber on said property to the Frost-Johnson Lumber Company, which company, in turn, transferred the same to this defendant.

It is not contended by plaintiffs that the record of the succession proceedings discloses any irregularity. Our examination of them has not disclosed any irregularity or omission, except that we do not find the oath of the Administrator, but we do find that letters of administration issued to him, and it has been held that letters of administration are presumptive evidence that the requisite oath has been taken and that where such is denied, the burden is upon him who makes the denial to disprove it. (Brooks vs. Walker, 3 La. Ann. 150.) Plaintiffs made no proof that the Administrator did not in fact take the oath, and we must assume that he did.

Counsel for appellants in brief state that they do not question the correctness of the position taken by counsel for defendant to the effect that a third person purchasing real estate has a right to rely upon the public records in matters of this kind, but they say that defendant did not allege that it was a purchaser in good faith, for which reason it has no right to urge its good faith before this Court. But counsel is in error, for it was specifically alleged in defendant's answer that it purchased said property in good faith on the faith of the public records, and that it paid a sound price for said property.

Counsel's main contention is that Gordon, who purchased the property at the succession sale, was a party interposed, and that in truth and in fact, the property was purchased by Gordon for McCoy, the administrator, and we think that is probably true because in the suit which the heirs of Craig instituted against McCoy, Gordon and Hanson, there was practically no defense made, it being conceded, as we understand it, that Gordon, in purchasing the property, was acting for the Administrator, McCoy, and the Judge so held, and set aside not only the succession proceedings, but the sale as well. But the present defendant, which had previously acquired the timber on the land in good faith, was not made a party to that suit and had no notice whatsoever thereof. Those proceedings cannot, therefore, affect the rights of defendant.

Conceding, therefore, that the succes-

sion proceedings were null and void, it does not follow that the title to the property which defendant acquired under said proceedings is bad, because defendant is a third party and had no notice of any secret nullities in said proceedings. On the face of the record, McCoy was regularly appointed administrator by the Court; letters issued to him and he was ordered by the Court to make the sale. It has been repeatedly held that mere irregularities in the appointment of an administrator or curator will not vitiate the acts done under said appointment.

Estate of Altemus, 32 La. Ann. 364.

Succession of Robertson, Jr., 49 Ann. 80, 21 So. 197.

Succession of Lehmann, 41 La. Ann. 987, 7 So. 33.

Macready & Burke, Executors, vs. Schenck et al., 41 La. Ann. 456, 6 So. 517.

In the case of Bell et al. vs. Lafosse et al., 126 La. 528, 52 So. 687, it was specifically held that,

"The sale of property under an order of Court by an administrator to a third person interposed for the administrator may be null as between the heirs of the late owner and the original vendee, but this nullity does not extend to subsequent purchasers in good faith, and with no knowledge of the concealed defect in the title of the original vendee."

To the same effect is 'the holding in the case of Chaffe et al. vs. Minden Lumber Co., 118 La. 753, 43 So. 397. See also Copland vs. Carey, 130 La. 189, 57 So. 796; Bender vs. Chew, 129 La. 849, 56 So. 1023; Mays vs. Little Rock & M. R. Co., 121 La. 231, 46 So. 220; Mendelsohn vs. Blaise, 52 La. Ann. 1104, 27 So. 707; Vital vs. Andrus, 121 La. 221, 46 So. 217.

The defendant company bought the timber in question and paid $900 cash therefor, which was a sound price, and it is neither alleged, proved or even suggested that in making the purchase it acted otherwise than in good faith. Our conclusion is, and we hold, that its title to the timber was good and valid.

It is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed, with costs in both courts.